## SHAUER v. ALTERTON.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA.

No. 174. Argued and submitted December 19, 20, 1893. – Decided February 5, 1894.

An assignment of error, based upon the exclusion by the trial court of an answer given in the deposition of a witness to a particular question, will be disregarded by this court, if the answer or the full substance of it is not set forth in the record in an appropriate form for examination.

In an action brought in South Dakota by the assignee of the stock of goods of an insolvent trader (who had taken the stock in satisfaction of an alleged debt due him from the insolvent) against a sheriff who had seized them on a writ of attachment at the suit of a creditor of the insolvent, the defence being set up that the transfer to the plaintiff was fraudulent and in violation of the statutes of that State, it is competent for defendant to put in evidence a confidential business statement by the insolvent to a commercial agency, concealing the alleged liability to the plaintiff.

The statutes of that State, strictly construed, invalidate any transfer of property, made with the intent, on the part of the owner, to delay or defraud creditors, even when the grantee purchased in good faith; and, when liberally construed, will not permit the grantee, although taking the property in part in satisfaction of his own debt, to enjoy it to the exclusion of other creditors, if the sale was made with intent to delay or defraud other creditors, and if he had, at the time, either actual notice of such intent, or knowledge of circumstances that were sufficient to put a prudent person upon an inquiry that would have disclosed its existence.

Such a transfer must be accompanied by an open and visible change of possession, without which it will be void as to creditors.

The assignor and the assignee to the transfer being brothers, the court may rightfully instruct the jury that this relation makes it necessary to carefully scrutinize the facts, but that their determination must depend upon whether the transaction was honest and *bona fide*.

THIS action was brought by the plaintiff in error in one of the courts of the Territory of Dakota to recover damages for the alleged unlawful taking by the defendant Alterton of a certain stock of merchandise in a storehouse that had been occupied by Louis S. Shauer, in the city of Mitchell, in that Territory. The defendant justified the taking under attachments in favor of creditors of Louis S. Shauer, which came to his hands as sheriff of the county. There was a verdict in favor of the defendant; and a new trial having been denied, judgment was entered in his favor. That judgment was affirmed by the Supreme Court of the Territory, and the writ of error in this case was directed to the Supreme Court of the State of South Dakota, as the successor of the Supreme Court of the Territory of Dakota, by virtue of the act of February 22, 1889, c. 180, § 22, 25 Stat. 676, 683.

The bill of exceptions shows that there was evidence tending to show the following facts:

In September, 1885, Louis S. Shauer, owner of the merchan-

dise attached, was indebted to his brother Gustave G. Shauer, a druggist of Chicago, in the sum of $8000 and more, for moneys loaned and advanced. While Louis was in Chicago, about September 1, 1885, for the purpose of making fall purchases, Gustave informed him of his intention to buy another drug store, and that he would need the sum Louis owed him. The latter expressed his expectation of being able soon to pay one-half of the amount due from him, and after returning to Mitchell remitted a smaller sum than his brother expected. Gustave, having written for more, and receiving only $200, went to Mitchell, arriving there on Sunday, December 13, 1885. From a conversation with Louis during the evening after his arrival at Mitchell, Gustave concluded that Louis was financially embarrassed, and owed more than he could pay. The following morning he urged his brother to secure him by mortgage on his stock. Louis at first consented to do this, but at a later hour of the same day he declined to give a mortgage. Gustave then proposed that Louis sell him goods to the amount of his debt. This Louis refused to do, unless Gustave would take the entire stock, at fair market prices. After consultation, it was agreed that Gustave should take Louis' stock at 85 cents on the dollar, invoiced at wholesale prices, and, after deducting Louis' debt to him of $6788, pay $2100 in cash, and give his notes for the balance. They commenced that afternoon the taking of an inventory, and were so engaged for a day and a half. The inventory was taken publicly, the storeroom being open while the work was progressing. About ten or eleven o'clock in the forenoon of December 16, 1885, Louis made a bill of sale to Gustave, embracing the goods here in controversy. After its execution, the parties proceeded to the store in which the goods were contained, when Gustave delivered to Louis his check for $2100, and his two notes of $1247 each, surrendering the note he held against his brother. Louis delivered to Gustave the bill of sale and the keys of the store. The transfer was completed about noon of that day.

Immediately after the transfer Gustave opened an account with the First National Bank of Mitchell, and went with

Louis to an insurance office, where the insurance carried by the latter on the stock was assigned to Gustave. They then went to dinner. That afternoon they caused three other policies of insurance to be changed from Louis to Gustave, after which the latter returned alone to the store and directed Louis' clerk to go to dinner. Having returned to the store, and being informed by Gustave of his purchase of the stock, the clerk entered the service of the latter. By direction of Gustave he changed the "show" in front of the store. During the most of that afternoon Gustave remained in the storeroom and waited personally upon customers. He prepared and left for publication at the office of the Republican and Mail, newspapers published at Mitchell, notices announcing the transfer from Louis to himself, and asking for the patronage of the public. These notices appeared in the next issue of each of those newspapers. He also ordered letter-heads to be printed, and a sign for the store with his name painted on it. He filed the bill of sale for record in the office of the register of deeds. During the afternoon of the day of the transfer Louis, on one occasion, at the request of Gustave, came to the store to assist in making the sale of a trunk, with the price of which Gustave was not familiar.

Louis applied the check of $2100 and the two notes of $1247 each in payment of demands held against him by several of his relatives.

The goods in controversy were seized by the sheriff under the attachments about ten o'clock in the evening of December 16, 1885. Louis was present in the store at the time.

The bill of exceptions shows that the plaintiff read in evidence the deposition of H. H. Nash, cashier of the Chicago National Bank, relating to three checks of $650.00, $270.87, and $2100.00, respectively, which were in evidence in the case as exhibits, and showed upon their faces that they had been drawn by G. G. Shauer upon the Chicago National Bank in favor of Louis S. Shauer. The first two checks named, as alleged by the plaintiff, tended to show the payment of money by the plaintiff to his brother Louis, making a part of the indebtedness in question, and the third check of $2100.00 was

the check the plaintiff claims to have passed to Louis in part consideration of the alleged transfer. On the objection of defendant the court refused, upon the ground of its being incompetent, to allow the plaintiff to read the answer of the deponent in response to the following question: "You may state whether or not that check has all the appearance of having passed through the bank in the ordinary course of business." The objection to this question was sustained upon the ground that it appeared in evidence that the check had passed through other banks than that of which the witness was cashier, and it did not appear that the witness was familiar with the course of business of such other banks or their stamp or endorsement thereon, so as to permit him to answer this general question.

To the refusal of the court to allow the answer to be read, the plaintiff duly excepted.

The plaintiff further offered to read in evidence other parts of the deposition of Nash showing what the marks and endorsements on the back of each of the checks indicated, how such marks were made, and by whom. The court refused to allow those parts of the depositions to be read, and to this refusal the plaintiff duly excepted. The objection to this offer was sustained upon the same ground as that last stated.

It appeared that the deposition was taken in Chicago, at the taking of which both parties appeared by counsel, and that Nash was cross-examined at length by counsel for defendant as to his familiarity with the business of the Chicago National Bank, of which he was cashier.

The defendant was allowed under objection by plaintiff, to which ruling the plaintiff duly excepted, to read in evidence a confidential business statement made by Louis, in January, 1885, to Bradstreet's Commercial Agency at Sioux City, Iowa. This statement, the bill of exceptions states, concealed the alleged indebtedness of Louis to his brother, the plaintiff, which existed at that time. It was not shown that this statement was brought to the knowledge of the plaintiff, nor to any of the creditors of Louis. All of the indebtedness against Louis

upon which defendant relies, " was created at and subsequent to September, 1885."

Neither party asked a peremptory instruction to find in his behalf. The plaintiff asked ten instructions, of which only three were given, the plaintiff excepting to the refusal of the court to give each of the others. Six instructions were given, at the instance of the defendant, to the giving of each of which the plaintiff excepted. In addition, the court charged the jury, the plaintiff excepting to six different parts of the charge.

*Mr. Henry W. Magee, Mr. A. E. Hitchcock,* and *Mr. E. W. Adkinson,* for plaintiff in error, submitted on their brief.

I. Plaintiff should have been allowed to read in evidence the deposition of H. H. Nash, cashier of the Chicago National Bank. The duties of a cashier being well defined and the courts assuming that this officer always performs such duties, it follows that a person holding the office of cashier and familiar with the business of the bank, is acquainted with the details of the ordinary transactions falling in the line of his duties, and hence is a competent witness to testify concerning the same. *Merchants' Bank* v. *State Bank,* 10 Wall. 604; *Baldwin* v. *Bank of Newburg,* 1 Wall. 234; *United States* v. *City Bank of Columbus,* 21 How. 356.

II. Under objection by the plaintiff the defendant was allowed to read in evidence a written statement made by Louis S. Shauer to Bradstreet's Commercial Agency of Sioux City, Iowa.

It was not shown that the plaintiff or any of the attaching creditors had knowledge, at any time, of this statement. The statement was made about one year previous to the sale in question. The object of the evidence was to show a false representation on the part of Louis S. Shauer as to his financial condition. The only allegation of fraud charged by the defendant is that on December 16, 1885, Louis S. Shauer being then insolvent, made a fraudulent sale of these goods to the plaintiff, for the purpose of defrauding his (Louis S. Shauer's) creditors. Upon the issue formed by pleading fraud of this

character, admissions made at this remote period would be irrelevant. The act was too remote to have any bearing on this fraudulent sale. Its effect would be to create prejudice in the minds of the jury.

III. The instructions given by the court upon the question of change of possession of the goods embraced in the transfer were not applicable to the state of facts shown by the evidence to have existed.

The plaintiff asked for the following instructions, which were refused: " The acts that will constitute a delivery and change of possession of property sold, so as to protect the parties to the transaction as against the creditors of the vendor, vary in different classes of cases, and will depend very much upon the character and quantity of the property sold, as well as the circumstances of each particular case. It is not demanded that the purchaser, to take possession of the property, go to an unusual expense and do that which is contrary to the usual course of business. If the purchaser takes a possession which places him in that relation to the property which owners usually are to the like kind of property, and does all reasonable acts with such property to inform the public of such purchase, and if such acts are open, public, and notorious, then such purchaser has done all the law requires him to do. You are to take into consideration the surrounding circumstances, the time the purchaser had been in control of the property, the kind of property, and all the elements making up the condition of this alleged sale, and if from these circumstances you find that Gustave G. Shauer took possession of the goods in question accompanied with such plain and unmistakable acts of possession, control, and ownership as a prudent *bona fide* purchaser would do in the exercise of his rights over the property, so that all persons might have notice that he owned and had possession of the property, then you are instructed that he has done all the law required of him in this particular."

On motion of the defendant the court gave these instructions: " You are instructed that a change of the property in controversy in this case must not have been merely nominal and momentary, it must have been real, actual, and open, and

such as could be publicly known; if the property in controversy was permitted to remain in the possession of Louis S. Shauer, then such transfer was fraudulent in law as to the creditors of Louis S. Shauer, notwithstanding the sale may have been to his brother in good faith and for a valuable consideration."

The instructions given state an arbitrary rule, which is in substance that the change in possession must be accompanied by such outward and visible signs that the world may be at once apprised of the change.

No reference is made to the time in which such visible signs may be given, the character of the property transferred, or the circumstances surrounding the transaction.

It was the refusal of the court to qualify this rule by giving the instructions asked by the plaintiff which furnishes the ground of plaintiff's exception. The court in these instructions uses the language of the decision rendered in *Grady* v. *Baker*, 3 Dakota, 296. In this case 12 or 16 days elapsed between the date of sale and time of levy. In the case in controversy this period is represented by a few hours.

The statute of South Dakota is similar to that of California. The case of *Grady* v. *Baker*, *supra*, is based upon the decision of that State. By a well-established line of decisions, the court of California defines the law to be, that no arbitrary rule can be given which will govern all cases; that each case must be guided by the surrounding circumstances. *Stevens* v. *Irwin*, 15 California, 503; *S. C.* 76 Am. Dec. 500; *Lay* v. *Neville*, 25 California, 545; *Godchaux* v. *Mulford*, 26 California, 316; *S. C.* 85 Am. Dec. 178; *Woods* v. *Bugley*, 29 California, 466; *Parks* v. *Barney*, 55 California, 239.

IV. Conceding, for the purpose of argument, that notice to the vendee would charge him with a fraudulent intent of the vendor, then the appellant maintains that actual and not constructive notice of such intent is a necessary element to charge a purchaser for a good consideration. *Foster* v. *Hall*, 12 Pick. 89; *S. C.* 22 Am. Dec. 400; *Gridley* v. *Bingham*, 51 Illinois, 153; *Hatch* v. *Jordan*, 74 Illinois, 414; *Waterman* v. *Donaldson*, 43 Illinois, 29; *Bridge* v. *Eggleston*, 14 Mass. 245;

*S. C.* 7 Am. Dec. 209; *Splawn* v. *Martin*, 17 Arkansas, 146; *Fifield* v. *Garton*, 12 Iowa, 218; *Brown* v. *Smith*, 7 B. Mon. 361; *Byrne* v. *Becker*, 42 Missouri, 264; *Weisiger* v. *Chisholm*, 28 Texas, 780; *Leach* v. *Francis*, 41 Vermont, 670; *Stearns* v. *Gage*, 79 N. Y. 102; *Parker* v. *Conner*, 93 N. Y. 118.

In this connection we call the attention of the Court to the rule adopted by the Supreme Court of the State of Kansas, from which the instruction complained of was taken. The rule as stated by that court was as follows: "If the circumstances surrounding his purchase are such as would put a prudent man upon inquiry, which, if prosecuted diligently, would have disclosed a fraud, he cannot be deemed a *bona fide* purchaser in good faith." *Phillips* v. *Reitz*, 16 Kansas, 396.

This case cites as authority the earlier case of *Baker* v. *Bliss*, 39 N. Y. 70. In the case of *Parker* v. *Conner*, *supra*, the eminent court ably analyzes the doctrine of *Baker* v. *Bliss*, and shows that it does not apply to cases parallel to the one at bar, nor to the class of cases in which it is applied by the Kansas court.

V. When a transfer is accepted by a creditor with the sole purpose of obtaining satisfaction of his own claim, the intent of the vendor, and the purchaser's knowledge of such intent is immaterial. In such case the purchaser is not a mere volunteer, and the transfer is distinguished by the authorities from a purchase upon a consideration advanced at the time. *Dudley* v. *Danforth*, 61 N. Y. 626; *Dougherty* v. *Cooper*, 77 Missouri, 528; *Frederick* v. *Allgaier*, 88 Missouri, 598.

VI. A creditor in obtaining payment of his claim may purchase property in excess of his debt, if such excess is reasonably necessary for attaining his lawful purpose. *Budlong* v. *Kent*, 28 Fed. Rep. 13; *Young* v. *Stallings*, 5 B. Mon. 307; *Little* v. *Eddy*, 14 Missouri, 160; *Hobbs* v. *Davis*, 50 Georgia, 213; *Reehling* v. *Byers*, 94 Penn. St. 316.

*Mr. Morgan H. Beach* for defendant in error.

Mr. Justice HARLAN, after stating the case, delivered the opinion of the court.

1. The refusal of the court to allow the plaintiff to read the answer of the witness Nash to the question, " You may state whether or not that check has all the appearance of having passed through the bank in the ordinary course of business," cannot be assigned as error. The bill of exceptions does not show what answer was made to that question in the deposition of the witness. It does not even state the facts the answer tended to establish. We cannot, therefore, say that the exclusion of the answer was prejudicial to the plaintiff. For aught that appears in the record, the witness may have made an answer that was injurious to the plaintiff, or one that was of no value to either party.

In *Packet Company* v. *Clough*, 20 Wall. 528, 542, one of the assignments of error was the rejection of a deposition. In respect to that assignment, the court said : " It is sufficient to say that we have not before us either the deposition or any statement of what it tended to prove. We cannot know, therefore, that it was of any importance, or that, if it had been admitted, it could have had any influence upon the verdict. A party who complains of the rejection of evidence must show that he was injured by the rejection. His bill of exceptions must make it appear that if it had been admitted, it might have led the jury to a different verdict. This must be understood as the practice in this court, and such is the requirement of our twenty-first rule. By that rule it is ordered that when the error assigned is, to the admission or rejection of evidence, the specification shall quote the full substance of the evidence offered, or copy the offer as stated in the bill of exceptions. This is to enable the court to see whether the evidence offered was material, for it would be idle to reverse a judgment for the admission or rejection of evidence that could have had no effect upon the verdict." At the date of the trial of that cause in the court of original jurisdiction it was provided, by rule twenty-one of this court, that " when the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence offered, or copy the offer as stated in the bill of exceptions. Any alleged error not in accordance with these rules will be disregarded." 11

Wall. ix. Subsequently, the rule was modified so as to substitute for the words above quoted the following : " When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected." 14 Wall. xii. This change of phraseology did not affect the substance of the rule.

The principle announced in *Packet Co.* v. *Clough* was reaffirmed in *Railroad Co.* v. *Smith,* 21 Wall. 255, 261, and *Thompson* v. *First Nat. Bank,* 111 U. S. 529, 535–6. The rule is not the less applicable in the present case, because the trial court excluded the answer to the question upon the particular ground stated in the bill of exceptions. It may, therefore, be regarded as settled, that an assignment of error, based upon the exclusion by the trial court of an answer given in the deposition of a witness to a particular question, will be disregarded by this court if the answer, or the full substance of it, is not set forth in the record in appropriate form for examination.

Nor did the court err in excluding those parts of Nash's deposition showing " what marks and endorsements on the back of each of the checks indicated, how such marks were made, and by whom." The checks themselves were in evidence; and if, as the bill of exceptions states, the witness did not appear to be familiar with the course of business of the banks through which the checks passed, so as to entitle him to speak upon the subject, the exclusion of his answers relating to the subject referred to was not error.

2. The court did not err in allowing the defendant to read, in evidence, the confidential business statement made by Louis S. Shauer to Bradstreet's Commercial Agency, at Sioux City, in January, 1885. That statement, the bill of exception recites, concealed the alleged liability of Louis to his brother, then existing. Why should such concealment have been made? The answer to that question has some, though, perhaps, very slight bearing upon the inquiry whether Louis was, in fact, indebted to his brother to the full extent claimed by the latter.

3. By the statutes of Dakota it is provided that " a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand, in

preference to another;" also, that "every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest, and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor;" further, that "every transfer of personal property other than a thing in action, or a ship or cargo at sea or in a foreign port, and every lien thereon other than a mortgage, when allowed by law, and a contract of bottomry or respondentia, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the transfer." Civil Code, §§ 2021, 2023, 2024; Compiled Laws of Territory of Dakota, §§ 4654, 4656, 4657.

Other provisions of the statute are to the effect that "actual notice consists in express information of a fact;" that "constructive notice is notice imputed to a person not having actual notice;" and that "every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." Civil Code, §§ 2107, 2108, 2109; Compiled Laws of Territory of Dakota, §§ 4741, 4742, 4743.

In view of these statutory provisions, and of the facts which the evidence tended to establish, two principal questions were considered by the court in its charge to the jury : first, whether the transfer of the merchandise in question was made with the intent to delay or defraud the creditors of Louis S. Shauer; second, whether the transfer to his brother was accompanied by such immediate delivery of the merchandise and followed

by such actual and continued change of possession as the statute required.

Upon the first of these questions, the court said, generally, to the jury, that an intent upon the part of the debtor to delay his creditors in the collection of their debts was as much within the statute as if the intent had been to cheat or defraud; that while a debtor, in failing circumstances, was at liberty, acting in good faith and openly, to prefer some creditors over others, he could not, as against those not paid, reserve to himself a secret trust in any transfer; that a creditor, thus favored by the debtor, will not be permitted to enjoy the preference given him if he seeks, by the transaction, to cover or protect the remainder of the debtor's property so that it could not be applied to the payment of his honest debts; and that if a creditor seeks to appropriate the debtor's property for a debt, any material part of which was knowingly fictitious, the whole transaction would be held as tainted with fraud and void as to other creditors.

Applying these principles to the facts of this case, the court said: "Therefore, should you find from the evidence that Louis S. Shauer was fairly and honestly indebted to his brother, Gustave Shauer, in the full amount claimed, which I believe is about $6700, you will remember the exact amount, and that with the honest intention of securing such indebtedness he purchased the property in question without notice or knowledge of any fraudulent intent on the part of Louis S. Shauer to delay or defraud his creditors, and without any intent on his own part to secure any interest in said property, present or future, to his brother Louis, and without any intent to delay or defraud the creditors of Louis S. Shauer, then he is entitled to recover whatever may have been the intent of Louis Shauer himself, for the intent of Louis Shauer can affect the plaintiff only in the case that he knew, had notice, or as a prudent man had knowledge sufficient from the circumstances to put him upon inquiry as to his brother's fraudulent intent. On the other hand, should you find that the alleged indebtedness from Louis to Gustave Shauer, and which forms a part of the consideration of the sale, was knowingly false

and fictitious in whole or in a material part, or should you find that the balance of the consideration money or price was paid by Louis to Gustave Shauer with the intent to place the same out of and beyond the reach of the creditors of Louis Shauer, or should you find that Gustave Shauer in making this purchase had any intent not only to secure his own indebtedness, but also the further intent to hinder and delay the creditors of Louis Shauer, or any intent to so dispose of the remainder of the property after the satisfaction of his own debt either that it would be out of the reach of the other creditors or that it would inure in the future to the use and benefit of Louis Shauer, then and in either event the transaction would be tainted with fraud, and the plaintiff cannot recover."

The jury was further instructed, at the instance of the plaintiff, that if they found that Louis Shauer made a sale of these goods to his brother, it would be presumed, in absence of proof to the contrary, that such sale was made in good faith and with honest intentions; that if the evidence was equally balanced, the defendant must fail in respect to the fraud alleged by him; and that if the plaintiff knew of the insolvency of his brother, and that the payment of his debt would deprive other creditors of their claims, "this mere knowledge on his part would not make the sale in question fraudulent."

The plaintiff contends that the instructions of the court upon the question of intent were based upon an erroneous interpretation of the statute, in that they made knowledge that was sufficient, under all circumstances, to put him, as a prudent man, upon inquiry as to his brother's fraudulent intent, equivalent to actual notice or knowledge of such an intent. That the court held this view is made clear by one of the instructions given to the jury at the request of the defendant, in which it was said that "actual knowledge by the purchaser of any fraudulent intent on the part of the seller is not essential to render a sale void;" and that "if the facts brought to the attention of Gustave G. Shauer were such as to awaken suspicion and lead a man of ordinary prudence to make inquiry,

and he fails to make such inquiry, then he is chargeable with notice of fraudulent intent and with participation in the fraud, and it will be your duty to find for the defendants."

It is admitted that if at the time of his alleged purchase the plaintiff had actual notice that his brother intended, by the sale, to delay or defraud his creditors, the sale would have been void against creditors. But the plaintiff denies that anything short of actual notice or knowledge of such fraudulent intent will suffice, under the statute, to invalidate his purchase. The statute of Dakota, strictly interpreted, would seem to invalidate any transfer of property made with the intent, upon the part of the owner, to delay or defraud creditors, even when the transferee purchased in good faith. But it was not thus interpreted by the court below. It was liberally construed so as to protect *bona fide* purchasers for value. Assuming, for the purpose of this case, that this interpretation was correct, we are of opinion that while the plaintiff was not bound to act upon mere suspicion as to the intent with which his brother made the sale in question, if he had knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors, and he omitted to make such inquiry with reasonable diligence, he should have been deemed to have notice of such fact, and, therefore, such notice as would invalidate the sale to him, if such sale was in fact made with the intent upon the part of the vendor to delay or defraud other creditors. Referring to the statute of Dakota, declaring a conveyance of real property, other than a lease for a term not exceeding one year, void as against any subsequent purchaser or encumbrancer, (including an assignee of a mortgage, lease, or other conditional estate, of the same property or any part thereof,) in good faith and for a valuable consideration, whose conveyance is first duly recorded, the Supreme Court of Dakota, in *Gress* v. *Evans*, 1 Dakota, 387, 399, said : "Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which should put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser. There should be

proof of actual notice of prior title or prior equities, or circumstances tending to prove such prior rights, which affect the conscience of the subsequent purchaser. Actual notice, of itself, impeaches the subsequent conveyance. Proof of circumstances, short of actual notice, which should put a prudent man upon inquiry, authorizes the court or jury to infer and find actual notice. Or, to express it exactly, good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious. And notice is either actual or constructive."

A less stringent rule cannot be applied to the Dakota statute relating to transfers of property with intent to delay or defraud creditors. The plaintiff had the right, by a purchase of his brother's stock of merchandise, to obtain payment of his claims in preference to the claims of other creditors. But the statute of Dakota, however liberally construed in favor of purchasers from a fraudulent debtor, will not permit him to enjoy, to the exclusion of other creditors, the fruits of his purchase, when the sale was made with the intent to delay or defraud other creditors, if he had, at the time, actual notice of such intent or knowledge of such circumstances or facts as were sufficient to put a prudent person upon an inquiry that would have disclosed the existence of such intent upon the part of the vendor. The plaintiff could not properly have claimed a more favorable interpretation of the Dakota statute than was given to it by the court below. A statute that declares every transfer of property, made with intent to delay or defraud any creditor of his demands, void against all creditors of the debtor, would be wholly defeated in its operation if the rights of the transferee were not subject to the rule that "whatever is notice enough to excite attention and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led." *Wood* v. *Carpenter*, 101 U. S. 135, 141; *Kennedy* v. *Greene*, 3 Myl. & K. 699, 722.

4. Having disposed of the question as to the intent with which the sale in question was made, the court referred to the

provision of the statute, declaring the transfer of personal property — the vendor having at the time possession or control thereof — to be conclusively fraudulent and void; as against creditors, unless such transfer is accompanied by an immediate delivery, and followed by an actual and continued change of possession. The court said to the jury that the statute means, as declared by the Supreme Court of the Territory in *Grady* v. *Baker*, 3 Dakota, 296, 299, that the sale shall be open and public, that the world may be apprised of the change of ownership; and that the change of possession must be actual and continued, and not subject to some secret trust between the buyer and seller. "Some of the cases," the court below observed, "say that the change must be of that character that customers and those accustomed to frequent the premises may be at once advised of the change of possession by the changed appearance of the property or its change of custody. And this is true, whatever may be the good intention or *bona fides* of the transaction; even the law will not tolerate such transfers as against creditors. The change of possession must be open and visible, and if not, as against creditors without knowledge of the transfer, it will be void, though made for a valuable consideration in good faith and without any actual intent to defraud. In such case the law conclusively presumes a fraudulent intent, and the party to such sale will not be heard to prove the contrary."

In addition to what appears in the charge, the court, at the instance of the defendant, instructed the jury that a change of the property in controversy in this case must not have been merely nominal and momentary, but real, actual, and open, such as could be publicly known; and that if the property was permitted to remain in the possession of Louis S. Shauer, then the transfer was fraudulent in law as to his creditors, notwithstanding the sale may have been made to his brother in good faith and for a valuable consideration.

The specific objection made by the plaintiff to these instructions is that they stated an arbitrary rule, namely, that the change in possession must be accompanied by such outward, visible signs as would apprise the world of the change, and

made no reference to the time within which such signs should be given, or to the nature of the property transferred or to the circumstances attending the transaction. The court, it is said, should have qualified the rule as indicated in the instructions asked by him. We cannot sustain this position. The instructions asked by the plaintiff, on this point, did not substantially differ from those given by the court, except they were more elaborate and referred more in detail to the facts. The court told the jury that the statute required not only an immediate change of possession, but one so open that the public would be apprised of it. While the court was at liberty to recall to the minds of jurors all the facts and circumstances bearing upon this issue, we cannot say that it erred in not doing so, or that it erred in leaving to the jury to determine whether, under all the evidence, there was such immediate delivery and such actual change of possession of the property in controversy as was necessary, under the statute as explained, to make the transfer valid against creditors.

In this connection, it is appropriate to say that the interpretation placed by the court below on the Dakota statute, relating to change of possession, accords with the decisions of the Supreme Court of California in respect to a similar statute. In *Stevens* v. *Irwin*, 15 California, 503, 507, it was said: "A reasonable construction must be given to this language, in analogy to the doctrines of the courts holding the general principles transcribed into the statute. The delivery must be made of the property; the vendee must take the actual possession; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession — not taken to be surrendered back again — not formal, but substantial." See also *Lay* v. *Neville*, 25 California, 545, 553; *Woods* v. *Bugby*, 29 California, 466; *Parks* v. *Barney*, 55 California, 239. There are many other cases to the same effect.

5. Exception was taken to what the court said to the jury

touching the relation of the plaintiff and the vendor of the goods. After observing that the law scrutinizes carefully all transfers of the failing debtor and zealously guards the rights of creditors against fraudulent dispositions of the debtor's property, the court said that it was for that reason that transfers to one's wife or to members of his family are carefully scrutinized, experience having taught that such conveyances are more frequently fraudulent than transactions between strangers or those not intimately connected or acquainted. It is said that this language authorized the jury to infer that the mere fact of the parties being related would cause the good faith of the transaction to be suspected. But this criticism of the charge is met by the next succeeding sentence, in these words: "Yet experience also teaches that honest and *bona fide* sales and transfers of property are made, and that too much stress, or even importance, should not be given to such a fact alone." It is also met by the fact that the court, at the instance of the plaintiff, instructed the jury that if these goods were sold by Louis to Gustave, the law presumed that the sale was made in good faith and with honest intentions; that in absence of proof to the contrary, the validity of the sale could not be questioned; that if the evidence was equally balanced upon that point, the defendant must fail, and that mere knowledge on the part of Gustave that his purchase would deprive other creditors of their debts would not make the sale fraudulent. Again, at the instance of the plaintiff, the court said: "The mere sale by a party of his stock of goods to a relative is not a badge of fraud. If such sales were fraudulent in themselves, it would be impossible for family connections to aid each other in case of financial embarrassment without danger of being placed in a false position and losing the entire sum loaned. Under this rule, if Louis S. Shauer owed his brother, Gustave G. Shauer, a just debt, he had the same right to transfer his property to his brother in payment of this debt as he would have had to transfer the same property to any one of these attaching creditors in payment of his claim."

The jury could not have been induced by anything said by the court to give undue weight to the fact that the transaction

in question was between brothers. If that fact induced them, under the instructions, — as it might properly have done, — to carefully scrutinize the evidence, it must be assumed that they performed their duty without forgetting the injunction that the law presumed the sale, despite the fact of the near relationship of the parties, to have been made in good faith, if accompanied by immediate delivery and followed by actual, continued change of possession.

We are of opinion that it was not error for the jury to be told that the relations of the parties to the transaction made it necessary to carefully scrutinize the facts, but that their determination must, at last, depend upon the inquiry whether the transaction was honest and *bona fide.*

We perceive no ground to doubt that the case was well tried. The jury were fully and properly instructed in respect to every aspect of the case, and we have no authority to set aside their verdict, even if it does not appear to be justified by the evidence. *Railroad Co.* v. *Fraloff,* 100 U. S. 24, 31; *Lincoln* v. *Power, ante,* 436.

*Judgment affirmed.*