SOUTHERN BUILDING & LOAN ASS'N OF KNOX COUNTY, TENN., v.
MILLER et al.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1901.)

No. 400.

MORTGAGES—INSURANCE BY MORTGAGEE—INSOLVENCY OF COMPANY.

A mortgage contained a covenant by the mortgagors to insure for the
protection of the mortgagee, and a further provision that if they failed
to insure the mortgagee might do so, and charge the premium paid to
them. They did not insure, and the mortgagee procured a policy, the
loss payable to itself, and rendered a bill for the premium paid to the
mortgagors, who, after some delay, paid it. The property subsequently
burned, and the insurance company proved insolvent, although the mort-
gagee had no knowledge of such fact, and was not chargeable with neg-
ligence in that regard. *Held*, that such facts constituted no defense to
the enforcement of the mortgage debt, the provision of the mortgage
not being a covenant to insure on the part of the mortgagee which the
mortgagors could bring into force by their own default, but merely an
option, in the exercise of which the mortgagee acted as agent for the
mortgagors, and its action was ratified by the repayment of the premium
without objection to the company selected, of which the mortgagors
were chargeable with notice if they failed to make inquiry.

Appeal from the Circuit Court of the United States for the West-
ern District of Virginia.

This case comes up on appeal from the circuit court of the United States
for the Western district of Virginia. On 27th January, 1897, Linda H. John-
son filed her bill against the Southern Building & Loan Association of Knox
county, Tenn., in behalf of herself and all other stockholders in, and creditors
of, the said building and loan association. This bill averred the insolvency of
the association, and prayed the appointment of a receiver to collect and ad-
minister its assets in the Western district of Virginia. The bill was intended
as ancillary to a bill filed or to be filed for a similar purpose in one of the
courts of Tennessee. Upon filing the bill, the circuit court for the Western
district of Virginia appointed J. R. Miller temporary receiver, and by a subse-
quent order made his appointment permanent. Answer having been filed,
the court proceeded to an examination of the several claims against the
defendant association and to the ascertainment and realization of its as-
sets. Among other assets of the association was a bond executed by J.
R. Miller and J. K. Warden, who had been conducting business under
the name of Miller & Warden, in the town of Pulaski, Va. The bond was
dated 1st February, 1892, and was secured by a conveyance by both of them
of a lot in Pulaski in the nature of a mortgage of same date to J. E. Moore,
trustee for the Southern Building & Loan Association of Knoxville, Tenn.
The bond was for $10,000, and was given to secure a loan of that amount on
100 shares of the said association standing in the name of J. R. Miller. Miller
had been the agent of the association in Pulaski. It seems that on 1st Janu-
ary, 1892, the co-partnership between Miller and J. K. Warden was dissolved,
and A. J. Miller and Clyde Miller, sons of J. R. Miller, took his place in the
firm, which was thereafter conducted under the same firm name of Miller &
Warden. On 21st January, 1892, J. R. Miller and wife conveyed in fee unto
A. J. Miller and Clyde Miller the one-half interest in this same lot mentioned
in the deed of trust to J. E. Moore, trustee, in consideration of the payment
by them of Miller's share of unpaid purchase money, and of one-half the loan
to be made to Miller & Warden by the Southern Building & Loan Association.
This arrangement seems to have been known to and acquiesced in by agents
of the building and loan association. The bond of Miller, however, was not
canceled or released. The lot of land embraced in the deed of trust was on
Commerce street, in the town of Pulaski, and the loan was effected in order
to erect a building upon it. That building was in course of erection, but was

not finished until some time late in March, 1893. It was damaged by fire on 6th August, 1893, to the extent of over $6,000. An effort having been made to recover on the bond as a part of the assets of the association, the circuit court appointed G. E. Cassel as special receiver to prosecute the claim, because of the connection therewith of J. R. Miller, the permanent receiver, Miller & Warden denying any responsibility on this bond for the reasons stated hereafter.

The deed of trust by Miller & Warden to J. E. Moore, trustee, given to secure this bond, had, among other covenants by the makers of the deed, these: "(2) That they will keep the buildings on said real estate insured in some solvent company, in such sum as said association shall require, not to exceed $5,000, for the benefit of this trust, and that they will assign the policy or policies of insurance to said trustee as further security in the premises. (3) That they will promptly pay all premiums of insurance on said property, as well as all taxes and assessments upon the same, and should they fail to insure the said property, or to pay any premiums of such insurance, or taxes and assessments, as the same may become due, then the said trustee or said association may take out such insurance, and pay any premiums of such insurance or taxes and assessments, as the same may become due, and any sum so paid shall, with interest from the day of such payment, become a part of the debt secured in this deed, and be due and payable with the next and ensuing monthly payment."

No insurance was put on the building by Miller & Warden up to February 13, 1893. The excuse given for this is that, the building being incomplete, a builder's policy was not contemplated in the deed, and, besides this, that John P. Heap, agent for the building and loan association, had agreed early in 1893 that Miller & Warden might have time to complete the building before placing insurance thereon. On the 13th February, 1893, the Southern Building & Loan Association caused the building to be insured in the Wytheville Insurance & Banking Company in the sum of $5,000. This policy was made out in the name of Miller & Warden, loss, if any, payable to the association. The association paid the premium, and then at once demanded its repayment by Miller & Warden. After several applications to this end, Miller & Warden paid the premium to the association on 11th July, 1893. Miller & Warden had been making arrangements to insure the building when completed in a company of their own selection, for $10,000. When they were notified that the association had effected insurance they abandoned this purpose. They deny all knowledge of the name of the insurance company in which insurance had been effected by the building and loan association, the premium upon which they had reimbursed to the association. The fire having taken place, proofs of loss were made and application sent in to the Wytheville Banking & Insurance Company for the loss. After negotiating and waiting, the insurance company proved insolvent and the loss was not paid. The contention is that the Southern Building & Loan Association was bound by covenant to insure the property in a solvent company, if Miller & Warden had not fulfilled their covenant to do so; that, having insured in a company not solvent, they must incur the loss, and thus Miller & Warden are exonerated. This view was taken by the special master, and was confirmed by the court. To this the appeal is directed.

R. M. Page (Jerome Templeton, on the brief), for appellant.

I. H. Larew, for appellees.

Before SIMONTON, Circuit Judge, and MORRIS and BOYD, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). When a case comes by appeal into this court, in which there are questions of law depending, more or less, on questions of fact, we examine into the findings of fact made by the master in which the court below has concurred, and give them great weight in reaching our conclusion. We regret to say that in this case we get no as-

sistance whatever from the findings of the master. His whole report of his actions shows a marked bias in favor of Miller & Warden, —a bias so strong that his report and conclusions impress us as those of an advocate, rather than of a disinterested officer of the court conducting a judicial inquiry. Nowhere is this more evident than in that most remarkable statement of what took place when the counsel for the Southern Building & Loan Association presented himself to represent his client's interest, and was excluded by the special master, who affected the air and assumed the power of an offended chancellor, until counsel should comply with terms imposed by the master, and which counsel could not have assented to except in dereliction of his duty to his client, and a betrayal of the relations between them.

We will inquire what was the connection of the Southern Building & Loan Association with the insurance on this property. The theory upon which the decree below proceeds is that Miller & Warden and the trustee, Moore, with the Southern Building & Loan Association, were bound by mutual covenants to insure; that Miller & Warden covenanted to insure the property in some solvent insurance company for the protection of the money loaned, and that the trustee and the association covenanted, if Miller & Warden did not so insure the property, to do it themselves in some solvent insurance company; that Miller & Warden did not fulfill their covenant, and that, therefore, the obligation fell on the trustee and the association; and that, these having insured in a company which proved to be insolvent, they must bear the loss, and Miller & Warden are discharged from the debt. If this theory be correct, then all that Miller & Warden need do was to commit a breach of the covenant, and by this act—because of this act—throw upon the covenantee, the creditor, the whole responsibility of effecting the insurance they had bound themselves to effect, and to assume the risk of obtaining solvent insurance. This would be a most liberal construction of the deed in favor of the debtor, enabling him to profit by his own default.

The contract is not capable of such a construction. It is a deed poll, and not an indenture. The covenant is stated to be the covenant of the parties of the first part, the makers of the deed. There are four clauses to this covenant of the parties of the first part: (1) That they will promptly pay all monthly dues, fines, and interest by the terms of the bond, or the laws, rules, and regulations of the said association; (2) that they will keep the buildings on said real estate insured in some solvent company, in a sum not exceeding $5,000, for the benefit of the trust, and will assign the policies to the trustee as further security in the premises; (3) that they will promptly pay all premiums of insurance on said property, as well as all taxes and assessments thereon. These are three covenants based upon consideration of the loan. Then it is provided that, in case they fail to observe these covenants, then the trustee or the association may—that is, will have the option, if they wish—take out such insurance, and pay such taxes and assessments, and, if they do so, any sum so paid, with interest from the day of payment, will become a part of the debt secured by the deed, and be payable with

next ensuing monthly payment. Now, this option on the part of the trustee and the association to insure the property to the amount of their debt was not dependent upon, nor derived from, the deed. They had an insurable interest, and could, of their own volition, insure it, without asking or needing the consent of the debtors. But in no event could they insure but for the amount of their debt. Carpenter v. Insurance Co., 16 Pet. 495, 10 L. Ed. 1044; Foster v. Van Reed, 70 N. Y. 19, 26 Am. Rep. 544. Having this right apart from this deed, the only meaning and purpose of this third covenant of the debtors was that, if they chose to exercise this right to insure, all the expenses to which they were put in such event were to be reimbursed by the debtors, and the reimbursement, with interest, was to be secured by the deed, on a footing with the original debt. This evidently was the view taken of the transaction by Miller & Warden before the loss by fire occurred. They were promptly notified of the payment of the premium of insurance by the association, and the repayment was at once demanded. After some delay, not because it was not authorized or because the insurance was disapproved of, but from some excuse or other explanatory of the delay, their money was returned by Miller & Warden, and the transaction was recognized and affirmed.

This conclusion is strengthened by the case of Wheeling v. Insurance Co., 101 U. S. 439, 25 L. Ed. 1055. In that case the mortgagor had executed successive mortgages on his plantation, buildings, machinery, and stock, securing the payment of certain notes. In two of these mortgages the mortgagor covenanted to insure the building, machinery, and stock, and to transfer the policies to the mortgagees, or, in default of this, that the mortgagees could insure at his expense. No such policy was effected by the mortgagor, nor did the mortgagees exercise their right to insure. But there had been effected on the same buildings, machinery, and stock an insurance prior to the mortgages by a creditor of the mortgagor. A fire occurred, and the amount of insurance paid exceeded the debt of the creditor, who insured, leaving an amount payable to the owner, the mortgagor. The supreme court held that the mortgagee, with whom the mortgagor had covenanted to insure the property and did not do so, had an equity to be paid out of the residue coming to the mortgagor. The court says:

"It is undoubtedly the general rule that a mortgagee has no right to the benefit of a policy taken by the mortgagor, unless it is assigned to him. But it is settled by many decisions in this country that if the mortgagor is bound, by covenant or otherwise, to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor, to the extent of the mortgagee's interest in the property destroyed."

This decision could not have been rendered if there was a binding contract on the mortgagee to insure if the mortgagor did not, so that if the mortgagee did not effect valid insurance the loss would have fallen on him.

Even if we treat the association as the agent of the debtors in effecting this insurance, we can see no reason for holding them re-

sponsible for the loss occasioned by reason of the failure of the insurance company. As such agents they were liable only for ordinary care. They had no notice or knowledge that the Wytheville Banking & Insurance Company was insolvent. On the contrary, the person charged with the insurance of the association stated at the time the insurance was effected: "We [the association] had reason to believe that the company was perfectly solvent, in fact their report issued at the time showed them to be solvent, and we [the association] had no means of knowing that the bonds, which were part of the assets, were worthless, or that they had been sold to the company by the president." Heuser, through whom the insurance was effected, never heard the solvency of the company questioned, and at that time felt perfectly satisfied that it was solvent. He had his office and discharged the duties of agent of the insurance company in the town of Pulaski, the residence of J. R. Miller and of Miller & Warden. Indeed, the witnesses who speak to the insolvency of the insurance company and its reputation refer to a period several months after this insurance was effected, and very clearly the company was not notoriously insolvent. Even J. R. Miller, deeply interested as he was in this whole matter, betrayed no question of the insolvency of the insurance company after the fire. At all events, Miller & Warden were notified of the insurance, and after some delay, occasioned in no sense by objection to the insurance, they paid the premium advanced by the association. They deny that they knew the name of the company in which the insurance was effected. It is difficult to believe that between February and July, the date of the insurance and the period during which they were dunned to repay the premium and the date at which they repaid it, J. R. Miller, who was in constant correspondence with the association, and Miller & Warden, who had a deep interest in the policy of insurance, remained in ignorance of the name of the company in which the insurance was effected. At all events, they had the means of knowledge. They knew that the association had effected insurance, that it had paid the premium, that it expected them to return it, and that it demanded persistently this return. This put them on inquiry. They are affected with notice of all that would have been discovered upon such inquiry. Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Shauer v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286.

Miller & Warden seek to hold the association to the loss, because, having made arrangements for effecting an insurance on the property for $10,000, they abandoned it when they learned that the association had placed upon it a policy for $5,000. Incidentally, this would appear to be complete recognition, affirmance, and adoption of the action of the association in insuring the property for them. Apart from this, the insurance effected by the association was for $5,000, payable exclusively on their debt, as additional security to it. The insurance proposed to be effected by Miller & Warden was on a wholly different insurable interest, the property itself, admitted to be worth more than $6,000. Both policies could have been effected. "A mortgagee can insure only to the amount of his debt,

but the mortgagor can insure to the full value of the property, notwithstanding the incumbrances." Carpenter v. Insurance Co., supra.

Upon the whole case, we are of opinion that there was error in the conclusion reached by the court below. Its decree is reversed, and the case is remanded to the circuit court for such further proceedings as may be consistent with the conclusion of this court.