## McHUGH v. DUANE et al.

### No. 491.

Municipal Court of Appeals for the District of Columbia.

May 28, 1947.

Ellis B. Miller, of Washington, D. C., (Milton W. King and Bernard I. Nordlinger, both of Washington, D. C., on the brief), for appellant.

George A. Cassidy, Jr., of Washington, D. C., (Frederick Stohlman, of Washington, D.C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellee, as receiver of Investors Fund of America, Inc., an insolvent Delaware corporation, sued defendant on an overdue promissory note. The only defense was a release purportedly signed by the president of the corporation and bearing its seal. The trial court, sitting without a jury, held the release invalid and gave judgment to the receiver for the face amount of the note less a small credit representing the proceeds of stock deposited as collateral for the note and sold under order of court in Delaware. Defendant prosecutes this appeal.

The trial resolved itself into a controversy over the validity of the release. Defendant originally owned some stock in Investors Fund of America, Inc., together with some stock in an associated oil corporation. She had bought this stock several years previously for $3,100 at the suggestion of her mother, who was a director of the Delaware corporation. In 1937 she borrowed $2,000 from the corporation on her promissory note and deposited as collateral the Investors Fund of America stock and the oil stock.

From time to time defendant paid the interest on the note and signed renewal notes when each became due. The mother, who lived in Chicago, visited the daughter in Washington on December 24, 1939, and during this visit the daughter received another renewal note for signature. The indebtedness was discussed between mother and daughter, the daughter signed the renewal note, due three months after date, and returned it to the corporation. Her testimony was that she inquired of her mother whether the note could not be canceled in exchange for releasing the collateral to the corporation, and the mother stated she would see what could be arranged. A few days later the mother went to the New York headquarters of the corporation and on January 5, 1940, defendant received from one Keppler, claimed to be president, the release in controversy.

284

The note was not canceled; · neither was it returned to defendant. Defendant made no formal transfer of the stock. The collateral was sold by the receiver in February 1942 for $61.43 under order of the Delaware Chancery Court after notice, as that court found, to defendant that the collateral was being sold *as collateral.* The proceeds of such sale were credited on the note.

The release did not mention the collateral but recited that it was given in consideration of $1 "and other good and valuable considerations." Neither did it refer to the specific note but purported to be a release from all indebtedness and claims of every sort on the part of the corporation against defendant. It was signed "Investors Fund of America, Inc., by R. S. Keppler, President," and also bore a certificate of acknowledgment before a notary public. This certificate did not contain the name of Keppler or anyone else but recited that (............), being first duly sworn, deposed and said he was president of Investors Fund of America, Inc., that the seal affixed to the document was the seal of that corporation and that he had signed the document and the seal had been affixed "by order of the Board of Directors of said corporation."

The validity of this release was denied by the receiver on the principal grounds that it was delivered in violation of a restraining order issued by the Chancery Court in Delaware, that it was given as a result of an arrangement between defendant and her mother, a director of the corporation, at a time when the stock of the corporation was known by them to be practically valueless, that it was signed by Keppler, who was not the properly elected president of the corporation, and that it was never authorized by the corporation directors. Referring to the minutes of the stockholders and of the directors, the receiver testified that although the corporation had six elected directors in 1938 only three had been elected in 1939, that there were various irregularities in notices of meetings, and that only one meeting of the Board of Directors was held during the period in controversy, and that the minutes of that meeting contained no reference to any authorization of the release.

Those shown to have been present at this directors' meeting were Keppler, defendant's mother and one Case Edwards. Keppler did not appear as a witness, and at the time of the trial Edwards and defendant's mother were deceased. In order to prove that the release had been authorized by the directors, defendant attempted to introduce in evidence a letter from Edwards to counsel for defendant written over three years after the signing of the release and bearing on various matters involved in the controversy. This evidence was rejected by the trial court, and such rejection is one of the errors assigned on this appeal. An alleged copy of Edwards' letter together with a copy of letter from counsel to which it was a reply are attached to defendant's brief, but they do not appear in the record; neither did counsel take the witness stand to identify them, nor to recite the circumstances of their being written. We do not believe, therefore, that they are properly before us on this appeal. We believe further that the letter from Edwards was inadmissible because it constituted hearsay and was written in contemplation of this suit. And even if the letter were admissible for the purpose for which it was offered, we believe that its rejection was harmless error because its admission could not legally have changed the result.

The trial court in a written memorandum found that the release was executed and issued in violation of an order dated April 13, 1939, issued by the Delaware Court of Chancery, in a creditor's suit against the corporation, such order enjoining and restraining the corporation, its officers and directors, from "transferring, assigning, selling or otherwise disposing of or pledging or encumbering any of the property" of the corporation; that such restraining order was in effect when the release was signed and until January 12, 1940; that on January 10, 1940, five days after the date of the release, a stipulation was entered in the receivership suit between counsel for the corporation and for the suing creditor that the corporation was "insolvent in the

equity sense, in that it was unable to pay its obligations as they matured in due course of business"; that there was serious doubt whether Keppler was the duly elected president of the corporation at the time he signed the release, but that even if he was president the signing of the release was beyond his power, and that there was no authorization by the Board of Directors for the release; that although defendant denied she knew of the restraining order or of the insolvent condition of the corporation at the time the release was given the court was of the opinion from the evidence and reasonable inferences to be drawn therefrom that defendant was fully advised of those facts.

■ We have concluded that under the circumstances the trial court was justified in finding that defendant had notice of the restraining order and of the financial condition of the corporation at the time the release was given. Defendant was a stockholder in the corporation, and her mother, a director, acted as agent for her daughter in securing the release. According to the daughter's testimony, she turned this matter entirely over to her. A principal is charged with the knowledge of the agent acquired by the agent in the course of the principal's business.[1] The same rule applies where the agent is agent for both parties.[2] The principal is affected by the knowledge which an agent has a duty to disclose to the principal to the same extent as if the principal had the information.[3] The rule springs from the actual or presumed performance of the duty resting upon the agent to inform the principal of all matters coming to his notice or knowledge concerning the subject matter of the agency, which it is material for the principal to know for his protection or guidance. So far as third persons are concerned, the law will not permit the principal to escape the consequences of notice by alleging that his own agent has not performed his duty.[4] Therefore, although defendant herself denied that she knew of the restraining order or of the bad financial condition of the corporation, the circumstances here were such that the trial court was justified, to say the least, in refusing to accept such denial.

■■ Furthermore, the relationship of a stockholder to a corporation and to the public who deal with the latter is such as to require good faith and fair dealing between the stockholder and the corporation in any transactions which may injuriously affect the rights of creditors, and, in the interest of creditors, a rigid scrutiny will be made of all such transactions.[5] From the nature of such cases creditors can seldom establish by direct evidence the transferee's knowledge of or participation in a plan to deprive creditors of their rights.[6] Here the testimony showed that at the time the release was given the stock deposited as collateral had a market value of approximately five cents a share, or a total market value of approximately $105, as compared with defendant's debt of $2,-000. Although the grantor was the corporation, the arrangements for the release were made between a mother and daughter, one of them a director and the other a stockholder. The alleged consideration for the release was grossly inadequate.[7] The transaction was not in the usual course of business of the corporation.[8] There was a misstatement of the consideration in the release.[9] The release was given when the corporation was insolvent or virtually in-

---

[1] Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956; Bowen v. Mount Vernon Sav. Bank, 70 App.D.C. 273, 105 F.2d 796; 2 Pomeroy's Equity Jurisprudence (5th Ed.1941) § 666; Mechem, Outlines of the Law of Agency (3d Ed.1923) §§ 486, 487.

[2] 2 Pomeroy's Equity Jurisprudence (5th Ed.1941) § 667a.

[3] Restatement, Agency (1933) § 275.

[4] Mechem, Outlines of the Law of Agency (3d Ed.1923) § 487.

[5] Potts v. Wallace, 146 U.S. 689, 13 S.Ct. 196, 36 L.Ed. 1135; Clark v. Bever, 139 U.S. 96, 11 S.Ct. 468, 35 L.Ed. 88.

[6] Wilmer v. Placide, 131 Md. 399, 102 A. 541.

[7] Clark v. Krause, 2 Mackey, 13 D.C. 559; Lowenstein v. Reikes, 2 Cir., 60 F.2d 933, certiorari denied 287 U.S. 669, 53 S.Ct. 315, 77 L.Ed. 577; 37 C.J.S. Fraudulent Conveyances, § 81.

[8] 37 C.J.S., Fraudulent Conveyances, § 83.

[9] Davis v. Schwartz, 155 U.S. 631, 15 S.Ct. 237, 39 L.Ed. 289; Kellogg v. Clyne, 8 Cir., 54 F. 696.

solvent.[10] Similar facts surrounding conveyances have been held to deprive the grantee of the position of a bona fide purchaser without notice.[11] Thus in addition to the rules relating to the relationship of principal and agent we believe that the surrounding circumstances were such that the trial judge was justified in holding that defendant had notice of the restraining order and of the bad financial condition of the corporation.

This being so, we conclude that the trial court was justified in treating the release as a nullity. A release is equivalent to a conveyance,[12] and even if the release be under seal and if its effect is to defraud creditors it is void as to them.[13]

Under such circumstances, it was unnecessary for the trial court to determine that the release was made with the intent to defraud the creditors of the corporation. It was made with notice in violation of the restraining order and for, at most, a grossly inadequate consideration, when the corporation was insolvent or on the verge of insolvency. There was no proof that the corporation accepted the stock in consideration for the release.[14] Such release, therefore was void.[15]

Defendant urges, however, that regardless of the original validity or invalidity of the release the corporation delivered it and accepted the security in exchange therefor and hence that the corporation and its receiver are estopped to deny its validity. Defendant also urges the defense of laches because the suit, although not barred by the statute of limitations of three years, was brought over two years and eleven months from the due date of the note. The trial court held against these contentions. We believe it was correct in so holding. As to laches, the Delaware court proceedings introduced in evidence show various steps taken to foreclose on the collateral culminating in the final filing of the suit. There was no evidence of undue delay or that the rights of defendant were prejudiced by such delay as there was. Thus no laches was shown.[16]

As to estoppel, it is a cardinal rule of such doctrine that one seeking to enforce the estoppel must have been misled by such conduct or action to his injury, else he cannot rely thereon.[17] Here, also, there was no evidence the corporation ever accepted defendant's stock as its own. It is also a just rule of estoppel that it may not be invoked to give one creditor advantage over others.[18] Furthermore, a participant in a scheme may not urge estoppel to make the scheme effective.[19] Defendant has shown no facts sufficient to bring herself within the doctrine.

Affirmed.

---

10 37 C.J.S., Fraudulent Conveyances, §§ 100, 105; see also Callan v. Statham, 23 How., U.S., 477, 16 L.Ed. 532; Parish v. Murphree, 13 How., U.S., 92, 14 L.Ed. 65; DeWalt v. Doran, 21 D.C. 163.

11 Green v. Tantum, 19 N.J.Eq. 105, affirmed 21 N.J.Eq. 364; 2 Pomeroy's Equity Jurisprudence (5th Ed.1941) §§ 592, 595; see also Shauer v. Alterton, 151 U.S. 607, 14 S.Ct. 442, 38 L.Ed. 286; Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 12 S.Ct. 239, 35 L.Ed. 1063; 2 Pomeroy's Equity Jurisprudence (5th Ed.1941) § 600.

12 Michel v. American Fire & Casualty Co., 5 Cir., 82 F.2d 583, 587.

13 Arthur & Boyle v. Morrow Bros., 131 Md. 59, 101 A. 777, L.R.A.1918A, 400; see Rockwell v. Capital Traction Co., 25 App.D.C. 98.

14 Rev.Code of Del.1935, c. 65, § 2051, prohibits a Delaware corporation from purchasing its own stock when the result would be to impair the capital of the corporation. See Gibbon v. Hill, 3 Cir., 79 F.2d 288; Coleman v. Tepel, 3 Cir., 230 F. 63.

15 City of Mankato v. Barber Asphalt Paving Co., 8 Cir., 142 F. 329, 335; see Callan v. Statham, supra.

16 Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931.

17 2 Fletcher, Cyclopedia Corporations (Perm.Ed.) § 752, p. 775.

18 Thompson v. Hudgens, 161 S.C. 450, 159 S.E. 807.

19 New York Life Ins. Co. v. Odom, 5 Cir., 93 F.2d 641, certiorari denied 304 U.S. 566, 58 S.Ct. 948, 82 L.Ed. 1532.