EDWIN M. WILMER *vs.* SUSAN E. PLACIDE.

SUSAN E. PLACIDE *vs.* EDWIN M. WILMER.

*Deeds: defective evidence of execution.   Equity: to multifari-*
*ousness; time for raising objections; bill for an*
*accounting and cancellation of mort-*
*gage. Multiplicity of suit.*

A deed purporting to be from the complainant to her sister,
the wife of the defendant, since deceased, was put upon
record by the defendant many years after its alleged execu-
tion; the complainant testified that she had no recollection of
having executed any such paper and that she had never
acknowledged such paper before the justice of the peace
before whom it was claimed she acknowledged it.   The com-
plainant had not by any positive act ever recognized the
execution of such a deed, but the defendant, in many state-
ments and reports, had included among the assets of the
complainant the property which according to the deed she had
conveyed away; in a bill filed by the complainant for an
accounting by the defendant, it was *held* that such a deed
should not be regarded as a deed of the complainant by which
title should be held to have passed to the grantee named.
                                                         p. 320

It was further held that the title to the property being in the
complainant, she was liable to the defendant as the husband
of the deceased mortgagee (his wife, who had died intestate)
for a balance upon the principal sum due by the complainant
and secured by a mortgage of the property referred to in the
alleged deed.                                            p. 321

From the evidence in the case, it was further held that accord-
ing to a contract between the parties and from their actions
in the matter, it did not appear that the complainant should
be charged with any interest on the said balance due by her
on the said mortgage.                                    p. 323

Where the objection of multifariousness made to a bill is not raised by a demurrer, but by a motion to dismiss, long after the defendant has filed his answers and at the beginning of taking of testimony, it is raised too late, and the defendant will be regarded as having waived his objection.     p. 324

A complainant filed a bill against the defendant to have a certain mortgage cancelled and released, to have him enjoined from assigning the mortgage or his interest in the claim purporting to be secured thereby, and from taking any steps to foreclose or collect the mortgage or claim, and that he be required to state an account, etc., and that he be required to vacate the mortgaged premises. *Held,* that such a bill is not multifarious.     p. 324

The issues raised by the bill and answers in this case were held not to be such as should be submitted to a jury under the provisions of the Code (See Bagby's Code, Art. 16, sec. 31).     p. 324

Equity has jurisdiction to prevent a multiplicity of suits and cases pending at the same time relating to the same subject matter which can be conveniently determined by one decree, may upon application of either party, be consolidated.     p. 325

*Decided June 12th, 1912.*

Two appeals in one record from the Circuit Court of Baltimore City (HEUISLER, J.).

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*David Ash* for Edwin M. Wilmer.

*John L. Sanford* and *Charles F. Stein* for Susan E. Placide.

PATTISON, J., delivered the opinion of the Court.

Susan E. Placide, the appellee in this case, filed her bill in the Circuit Court for Baltimore City, alleging, among

other things, that she was the owner of a house and lot of land, No. 1300 Madison Avenue, Baltimore, Md., which was sold and conveyed to her by the appellant, Edwin M. Wilmer and George W. Lindsay, trustees, by deed dated the 16th day of June, 1887, and duly recorded among the Land Records of Baltimore City. That on the 3rd day of November, 1890, she executed unto her sister, Alice B. Wilmer, a mortgage, which was assigned by her to the Mercantile Trust and Deposit Company, and by it assigned to Edwin M. Wilmer on the 28th of December, 1897, and which the bill alleges has been fully paid.

The bill alleges that the appellant is largely indebted to her for moneys collected as rents from her various properties, covering a long period of time, and for money entrusted to him to be paid upon said mortgage, and which he failed to apply thereto, but while so indebted to her wrongfully took an assignment of said mortgage to himself. That after the death of her sister she took charge and control of and cared for her three infant children hereinafter mentioned, and that in 1897 she allowed the defendant to bring to the Madison Avenue home, where the defendant, his children and the plaintiff then lived, his two sisters and two nieces, and permitted them to occupy the greater part of her house, under an agreement that "he would pay all expenses on said house, taxes, repairs and any interest that might accrue from any money due and owing on said mortgage, and further, that he would recompense her for any money that she might expend in clothing for his children, and would provide suitable meals, and generally that she need have no concern for said property, except to live in same, he to pay all and singular the expenses of said property."

That the mother and sisters are still occupying the greater part of said home against the protest of and to the prejudice of the rights of the plaintiff. That the appellee has failed to pay the taxes upon said property, permitting four years of such taxes to remain unpaid and in arrear, and has failed to maintain and keep in repair the house and premises

as he agreed to do in the agreement above mentioned. That
by his failure to pay said taxes, the property was about to
be sold for the payment of the same. It was then that she
called upon him for an accounting, and in answer thereto
she was told that he would foreclose the mortgage then held
by him, which he thereafter proceeded to do, and which pro-
ceedings are now pending. That after repeated requests, the
appellant finally handed her a partial and pretended state-
ment of various accounts, which, as alleged in the bill, are
false, incomplete and misleading. The bill alleges that she
cared for the children of the defendant and has expended
large sums of money for their clothing, for which she has not
been repaid.

The prayer of the bill asks: (1) that the said mortgage
be annulled; (2) that it be released; (3) that an order be
passed enjoining and restraining the defendant from fore-
closing the mortgage or from selling or assigning his interest
or claim therein; (4) that he be required to state an account,
under oath, of all monies received by him belonging to the
plaintiff; (5) that the said defendant be required to vacate
the premises.

The appellant in his answer to the bill denied the plain-
tiff's ownership of the property, and alleged that after the
conveyance to her by the trustees she deeded her property
away. He denied the alleged indebtedness from him to the
plaintiff, but alleges that she is indebted to him. He also
denied that he has refused and still refuses to give her an
accounting, but alleges that she is in possession of the book
wherein he correctly entered with great particularity, at the
times they should have been entered, the debits and credits
of said account, and that they were so made with the full
knowledge of the plaintiff. He denied any agreement with
the plaintiff in relation to the occupancy of the Madison Ave-
nue home by his relatives mentioned in the bill. He further
denied that the plaintiff ever entrusted any money to him to
be applied to the payment of the mortgage, or that he had
misappropriated any funds collected for her to his own uses,

and alleged that the assignment of the mortgage to him was for a full valuable consideration paid by him. He also denied that he was indebted to the plaintiff for moneys expended by her in the purchase of clothing for the children, but admitted that the plaintiff had been kind and affectionate towards his children. He admitted the execution of the mortgage and the alleged respective assignments thereof, but denied that the plaintiff or anyone for her had paid any part of the mortgage except the amount for which credit was given, which reduced the amount owing thereon at the time of the assignment to him to $3,959.89.

A general replication was filed to this answer and afterwards on December 28th, 1910, the appellee filed her bill in said Court against the said Edwin M. Wilmer and Henry Placide Wilmer and E. Placide Wilmer, sons of Edwin M. Wilmer, and one Harmon V. Morse, husband of Albalsheul Morse, deceased daughter of Edwin M. Wilmer, in which she alleges that Edwin M. Wilmer, one of the defendants, left for record in the office of the clerk of the Superior Court of Baltimore City a deed dated the 28th day of July, 1887, by which the said appellee was said to have conveyed to her sister, Alice B. Wilmer, the said house and lot of ground known as No. 1300 Madison Avenue. The bill further alleges that while the above named deed purports to be signed by the appellee and recites a consideration of nine thousand dollars, that no part of said sum was ever paid to her or did she sign said deed, or did she authorize anyone to sign said deed for her, and that she never saw or heard of it until at or about the time it was filed for record. The bill also alleges that although the said Wilmer claims to have had possession of the said deed since its execution, that neither his wife, while living, nor he, since her death, claimed ownership of the property therein described, until a short time before the filing of the deed, when Wilmer claimed there was a secret deed and that as his wife died intestate, seized of the property, he was entitled to a life estate therein, and then for

the first time he demanded payment of the appellee for the use and occupation of those parts of the Madison Avenue property that were and had been for years occupied by the appellee, and threatened to take legal action against her unless payment for such part was made by her therefor, and not until after the plaintiff had refused to pay the mortgage aforesaid and not until the bill had been filed in said Court asking, among other things, that said mortgage be annulled and set aside, did the defendant speak of this deed.

The bill further alleges that Alice B. Wilmer died June 29, 1891, intestate, leaving surviving her Edwin M. Wilmer, her husband, and the children above named. That Alblasheul Wilmer, after marrying with Harmon V. Morse, Jr., died on the 8th day of June, 1910, intestate and without issue, leaving her husband surviving her, and leaving E. Placide Wilmer and Henry P. Wilmer, her brothers, her only heirs at law.

In the prayer of the bill the Court is asked:

*First*: That by its decree it declare void the deed purporting to be made by the plaintiff to said Alice B. Wilmer.

*Second*: That pending the proceedings the said Edwin M. Wilmer be restrained from interfering with the possession or occupation of said house by the plaintiff, etc.

*Third*: For general relief.

To the bill of complaint Henry B. and E. Placide Wilmer answered admitting all the allegations of the bill, and alleged therein that after the death of their mother, who died in their infancy, they resided with their aunt, the plaintiff, at the Madison Avenue home, and that she cared for them as a mother. That the plaintiff was always regarded as the absolute owner of the Madison Avenue property and that the defendant, their father, spoke of it as the property of the plaintiff. That they had never heard of the alleged "secret" deed from the plaintiff to their mother until shortly before it was by their father filed for record, and that they are

willing and anxious that the said deed should be declared void and of no effect.

The defendant Harmon V. Morse, Jr., answered the bill admitting his marriage with Alblasheul P. Wilmer and also her death, but stated therein that he had no personal knowledge of many of the matters and things alleged in the bill, "although he has understood from statements made by his wife and others that said allegations are substantially true as therein stated."

The remaining defendant, Edwin M. Wilmer, answered the bill admitting the filing for record of the deed from the plaintiff to his wife, Alice B. Wilmer, at the time mentioned in the bill, but would neither admit nor deny that the plaintiff acquired title to the property by the conveyance from him and Lindsay, trustees. He denied that the plaintiff had occupied, possessed and made claim to the property for the time alleged in the bill. The answer further alleges that the said deed from the plaintiff to his wife is the deed of the plaintiff, and that before the execution and delivery of the deed to the plaintiff, under which she claims title thereto, there was a mutual agreement between her and her sister that she, the plaintiff, should hold such property for the benefit and as the property of the said Alice B. Wilmer, and that the said Alice B. Wilmer should supply the consideration therefor to be paid to the trustees, and that pursuant to said agreement the said Alice B. Wilmer supplied the purchase money therefor and the property was, under this agreement, conveyed unto the plaintiff, she to convey the same to her sister when called upon by her to make such conveyance, and that it was when called upon by her sister that she, the plaintiff, conveyed the property to her.

The answer further alleges that his wife, while living, and he, since her death, have consistently, continuously and openly claimed and done acts of ownership of the property mentioned in the deed, and that his wife while living and he since her death have occupied and been in possession of said prop-

erty as owners thereof, and not until about three weeks before
the filing of the bill did the plaintiff make any adverse claim
of title thereto. That the mortgage is now in default and by
reason thereof he is entitled to the possession of said prop-
erty, and that besides his interest as assignee of said mort-
gage, he has interest in said property as the husband of his
deceased wife. He denied that he had not spoken of said
deed to the plaintiff earlier than a short time before the same
was filed for record, but alleges that during the lifetime of
his wife and since, and long before the institution of these
proceedings, he had directly spoken to the plaintiff of said
deed and had notified her of the rights and claims of his
deceased wife and himself, and that long before the institu-
tion of this suit the plaintiff had admitted his title and the
validity of the claim made under the deed to his wife. To
this answer the defendant made affidavit.

To the answers of the defendants a general replication
was filed. Thereafter a motion was made by the defend-
ant Edwin M. Wilmer to dismiss the bill for multifarious-
ness, which motion was overruled, and upon the same day
the defendants filed a motion asking that the facts of the
case be submitted to the jury. This motion, too, was over-
ruled, and upon the motion of the plaintiff the two cases
were consolidated.

A great mass of testimony was taken in the case and much
of the record, of over four hundred pages, is taken up with
statements and accounts filed as exhibits. Exceptions were
filed to the bill and hundreds of exceptions were taken by
the defendants to the ruling of the Court upon admission or
rejection of testimony.

By the decree appealed from, the said deed from the
plaintiff to Alice B. Wilmer was set aside and annulled, and
it was adjudged that the property therein described was the
property of the plaintiff, and thus the defendant, Edwin M.
Wilmer, was directed to remove from the property within
the time therein mentioned. The papers in the case were

referred to the auditor therein named to state an account, with the following directions briefly stated:

1st. The plaintiff to be charged with the mortgage debt, but with no interest thereon, with the cost of recording mortgage.

2nd. That she be credited with the two sums arising from the estate of Jennings Placide, deceased, amounting to $1,689.03, with interest on each sum from the date of its receipt by Wilmer.

3rd. That the plaintiff be credited with the sums shown by the books to have been charged against her as board, etc., and with interest on each of said sums so retained.

4th. That she be credited with one-half of the amount received by Wilmer as rent for No. 1001 E. Pratt street, less expenses, etc., therein mentioned, and one-half of the rent of $100 from 1901 McCulloh street, not accounted for by him, with interest on each of said sums.

5th. That she be credited with any taxes and water rents on No. 1300 Madison avenue not paid by Wilmer since August 12th, 1897.

6th. That Wilmer "be allowed such part of the sum of $1,055.30 referred to in his ledger named in evidence, for the payment of which he can show proper authority from Miss Placide, with interest thereon," etc.

It is from the decree of the Court of October 27th, 1911, "setting aside the deed from Susan E. Placide to Alice B. Wilmer and declaring the property therein named to be the property of Susan E. Placide, and in referring the papers to an auditor," etc., that the defendant appeals. While the plaintiff appeals from that portion of the decree which charges the mortgage therein named as a lien on No. 1300 Madison avenue, and from that part of the decree which refuses to allow her for moneys said to have been expended by her for clothing, etc., for the children of Edwin M. Wilmer.

The filing of the second bill in these consolidated cases resulted from the denial of Edwin M. Wilmer in his answer

to the first bill filed that the plaintiff is the owner of the property mentioned in the bill as No. 1300 Madison avenue, and from his allegation in his answer that subsequent to the conveyance to her by him and Lindsay, trustees, "the plaintiff deeded away the property aforesaid."

The first bill was filed on November 10th, 1910. The answer of Wilmer thereto was filed December 19, 1910. On the 8th day of December, 1910, between the filing of the bill and the filing of the answer, Wilmer, the defendant, filed for record in the Superior Court of Baltimore City, a deed in his own handwriting which had been, as he claims, in the possession of his wife and himself since the date of its alleged execution, July 29, 1887—a period of over twenty-three years—which deed purports to be a conveyance of said property by the said Susan E. Placide to Alice B. Wilmer.

The plaintiff in her testimony stated that she had "perfect confidence in the defendant," to whom she, after the death of his wife, gave entire charge of her affairs; "that she did whatever he told her in any transaction and in every case," and as she says, "I supposed he was doing the right part by me. I was signing papers and other things and I always did just as he asked." She stated in her testimony she had never heard of the deed before November, 1910, nor had she ever seen it. She was then asked, "Do you deny signing it"? To which she replied, "Well, I could not deny it if I saw my own hand-writing to any paper, but not to a deed of such a description knowing it to be a deed, as I never heard of it. I signed a great many papers not knowing what was in them." She denied signing it knowing it to be a deed.

The defendant, Edwin M. Wilmer, testified that the body of the deed, with the exception of the date, "the 28th of July," was in his handwriting, and the signature thereto was the hand-writing of Susan E. Placide. That he was present when the "paper" was signed; but not present when it was executed and acknowledged. That at the time it was signed by the plaintiff there were three persons present beside

Miss Placide, "Mrs." Alice B. Wilmer, Mr. Jennings Placide and myself, and it was signed in the sitting-room back of the second-story front room, which at that time I used as a library. Later, on being asked by his counsel when the paper was executed, he said on the 28th of July, 1887. And when asked by the Court "what do you mean when you say it was executed on the 28th of July, 1887"? he stated, "I mean the date of the acknowledgment by the justice of the peace is July 28th, 1887." He was then asked by the Court, "Is that the only information you have, reading from the deed"? And he answered, "Yes."

This is practically all that was said in relation to the signing or execution of the deed. The defendant stated that after it was executed it was delivered to Mrs. Wilmer, the grantee named therein, but it soon thereafter passed into his possession, where it remained until November, 1910, when he filed it for record.

After its alleged execution and while in the possession of the defendant or his wife, and with the full knowledge on his part of its existence, we find disclosed by the record the following acts or admissions of both the defendant and his wife which are absolutely inconsistent with the claim of title or ownership here made by the defendant under this alleged deed.

The property here involved, No. 1300 Madison Avenue, at the time of the marriage of Edwin M. Wilmer and Alice B. Placide and for years prior thereto was the home of the Placides, and it was there the plaintiff, her sister and brother, lived at the time of such marriage, and where they, including the defendant, continued to live thereafter, and where both the plaintiff and defendant now live. A few years only after said marriage, this property, upon the death of Mrs. Placide, the owner of the same at the time of her death, was sold by Edwin M. Wilmer and George Lindsay, as trustees, and as shown by the report of sale made under oath of the trustees aforesaid, forming a part of this record, the

plaintiff became the purchaser thereof at and for the sum of $9,000. The property was afterwards conveyed to her by said trustees, in which deed it is acknowledged that the whole of the purchase money therefor had been paid.

By the will of her mother, Mrs. Wilmer was made trustee for her brother, Jennings Placide, and upon the purchase by the plaintiff of property No. 1300 Madison Avenue, the plaintiff borrowed from her sister as trustee for Jennings Placide, the sum of $4,000, which was applied in part payment of the purchase money for said property. To secure this loan the plaintiff gave to her sister her promissory note for said sum. While the note was outstanding and unpaid, Mrs. Wilmer, as such trustee, on the 3rd of November, 1890, filed in the Circuit Court for Baltimore City her petition, under oath and in the hand-writing of her husband, in which she asked to be permitted to invest said sum of $4,000, to secure the payment of which the note had been given, in mortgage upon the property of the plaintiff, No. 1300 Madison Avenue. On November 30, an order of the Court was passed, which was also in the hand-writing of her husband, ordering her to make such investment, and on the 31st of November a mortgage for said sum, upon said property, which is the mortgage in these proceedings, was executed by the plaintiff to Alice B. Wilmer, trustee, to secure said loan.

On February 24th, 1891, Edwin M. Wilmer, for his wife, applied to a bank of Baltimore for a loan on note of his wife endorsed by himself and Miss Placide, submitting with the application, which was in his hand-writing, a schedule of the property of each of them. In the schedule of the property of the plaintiff is found the property No. 1300 Madison Avenue. This schedule, as he testified, was made out with the full knowledge and assent of his wife and the plaintiff.

On July 17, 1896, the defendant prepared a schedule in his own hand-writing to be made and sworn to by the plain-

tiff and to be returned to the Tax Department of the City, in which schedule she, the plaintiff, is said to be the owner of the said Madison Avenue property. This schedule was sworn to by the plaintiff and returned to the Tax Department.

In 1897 the defendant, Edwin M. Wilmer, prepared for the plaintiff a draft of will to be executed by her, in which the Madison Avenue property was represented as hers and provision was therein made for its disposal by her.

On December 7th, 1900, he gave to the bank a book containing statements, in his own hand-writing, of the individual property of himself, his wife and Miss Placide, in which the plaintiff is said to be the owner of the Madison Avenue property, subject to the balance ($3,959.98) then owing on said mortgage.

On March 4th, 1904, he gave to the bank a third schedule of the property of Miss Placide in which the Madison Avenue property is again said to be the property of Miss Placide, subject only to said mortgage.

In July, 1907, he prepared application for permission to make certain repairs upon No. 1300 Madison Avenue, the blank being filled in his hand-writing, and to which he signed the name of Susan E. Placide.

On November 4, 1910, he wrote Miss Placide a letter calling upon her for the payment of the mortgage debt and threatening its foreclosure if not paid. In this letter he suggested that she no doubt could make a new mortgage loan on the property from some new lender, telling her of the probable expense of such new mortgage loan and reminding her of the expensive character of mortgage foreclosure proceedings for which, as he says "*You* would be responsible."

In addition to these acts and admissions of Edwin M. Wilmer consistent with the claim of ownership of this property by the plaintiff, we have the testimony of George Placide, nephew of the plaintiff, James W. Perry, a colored man who frequently did repair work upon the property, and Edwin P. Wilmer and Henry P. Wilmer, sons of the defend-

ants, wherein they testify that Edwin M. Wilmer had declared to them that the property here involved was the property of the plaintiff.

The defendant as well as his sister, Miss Florence Wilmer, contradict the plaintiff in her testimony in which she says she had no knowledge of the existence of this deed earlier than November, 1910. Miss Wilmer testifying that on one occasion when the question of ownership arose she heard her brother say to the plaintiff that it was the property of her sister, to which the plaintiff made no response. The defendant testified that the plaintiff knew from the first, that is, from the time of its alleged execution, of the existence of the deed and that it was mentioned to her on a number of occasions.

He attempts in some of the instances stated to explain such acts and admissions inconsistent with the wife's ownership of the property and the *bona fides* of the deed under which he now asserts an interest in said property and his right of possession thereto. These explanations, however, are not at all satisfactory and throw little or no light upon the mystery of this deed and the occasion of its long suppression before the same was brought to light by its production for record more than twenty-three years after its alleged execution.

The plaintiff, as we have said, was living at this property with her mother, sister and brother before the advent into the family of the defendant by his marriage to her sister. At that time it was the property of her mother. Later it was sold and conveyed to the plaintiff by the defendant and another as trustee, and ever since then she, as the holder of the record legal title thereto, has continued to occupy said property, and so far as the record discloses there is not a single act or admission of hers inconsistent with such ownership by her, except the alleged quiescent admission of hers testified to only by the defendant and his sister, Miss Florence Wilmer, and contradicted by her; while on the other hand there are numerous acts of hers, covering the entire

period of her occupancy and possession, supported by the acts and admissions of the defendant, fully in accord with the claim of ownership or title made by her, and which are entirely inconsistent with the claim of ownership in the sister under the deed here set up.

As to the signing of the paper, purporting to be a deed, which occurred more than twenty-three years prior to the time of her testifying, she has little or no knowledge. The signature she admits to be hers, but, as she says, it was placed there without the knowledge on her part that she was signing the deed, had she known it she would not have signed it. The fact of signing such a paper, not knowing it to be a deed, made no impression upon her mind, and thus she cannot recall its execution or any of the facts and circumstances relating to the same. She says, however, that she was called upon to sign many papers and in this she is corroborated by the testimony of the defendant. She testified positively that she acknowledged no paper before McCaffrey, justice of the peace, the justice before whom this deed is alleged to have been acknowledged, and as to the acknowledgment the defendant himself says that he was not present when made.

The acts of the defendant are not consistent with the ownership of the wife in said property, nor with any interest such as he now claims devolves upon him as her husband or as holder of the mortgage. Mrs. Wilmer, the wife, was not trustee for the sale of this property and there was nothing to prevent her, so far as the record discloses, from becoming the purchaser of said property. She, as trustee of her brother, loaned to her sister, as it is claimed, a part of the money with which the property was purchased. If the fact that any part of the trust fund of the brother was to be used in the part payment of the purchase money for this property in anywise governed or controlled her in having her sister returned as purchaser of said property, even though she, Mrs. Wilmer, was supplying the money with which it was to be paid, as intimated by the defendant, such

reasons did not exist at the date of the execution, of the mortgage, more than two years after the date of the alleged deed. The alleged deed, under which she claims, could have been recorded and the mortgage executed by her to the newly appointed trustee to secure such money. This, however, was not done, but she, as trustee, took the mortgage from her sister upon lands and property therein represented as the lands of her sister, which at that time were owned by her if the alleged deed was *bona fide* and intended to be effective to pass title, and in which lands a legal fee simple title in her would have been consummated by the filing of the deed of record.

Considering all the facts and circumstances of this case relating to the execution of the alleged deed and the relation of the parties in connection therewith, its long suppression and its production twenty-three years after the date of its execution, at a time when the relations of the parties were much estranged and the plaintiff was asserting her right to the property against the defendant and members of his family remaining as occupants of said house against her protest, and also demanding an accounting from him for money alleged by her to be due by him to her, and the continuous possession of said property by the plaintiff, accompanied by acts of ownership of the same, acquiesced in by both the defendant and his wife, we do not think that such alleged deed can or should be regarded as a deed of the plaintiff by which title passed from her to her sister, Mrs. Wilmer. Therefore, we think the Court below committed no error in so holding.

The mortgage of $4,000 upon the property here involved, executed by the plaintiff to her sister, Mrs. Wilmer, and reduced to the sum of $3,959.89 at the time of the assignment of it by the Mercantile Trust and Deposit Company to the defendant, Edwin M. Wilmer, by the application of certain money belonging to Miss Placide received by her from the estate of Jennings Placide, was held by the learned judge below to be an outstanding indebtedness of the plain-

tiff to the defendant, and in his decree directed that the same should be charged against her in the account to be stated by the auditor, but upon which no interest should be allowed the defendant. We think the Court committed no error in so decreeing.

As we have said, the plaintiff has appealed from a part of the decree because of the recognition of said indebtedness, while the defendant complains of the refusal of the Court to allow interest on said mortgage. The plaintiff sets up a contract by which she claims she is relieved of the payment of interest on this mortgage to the defendant. In 1897, some years after the death of the wife, it seems that Edwin M. Wilmer wished to bring into his family his mother and two sisters. To this end he, on August 12, 1897, wrote to the plaintiff, who was at that time summering at Rock Hall, Md., with the children of Wilmer, informing her of his wishes and saying therein, "To arrange this I must either remain at No. 1300 or find some other suitable house. If you are willing to give me absolute control over the property and its contents I will *continue* to pay all expenses on the property and will arrange all other domestic affairs, so that you will have no concern whatever, to occupy such apartments as you may select and eat your meals." Later, on September 1st, he again wrote her saying that he had made no arrangements with his people because he had not known what he could do or might have to do until he had consulted her, saying, "If my arrangements suit others I will be glad to have them with us, if they do not, then everyone is at liberty to make their own."

The evidence of the plaintiff and defendant is somewhat conflicting as to the acceptance of the proposition contained in the letter of August 12th. The defendant declaring that she violently opposed this movement and refused to accept the proposition made to her by this letter, while she admits that she opposed the introduction of the mother and sisters into the household, and stood out against it, but finally acquiesced and accepted the proposition so made to her.

The defendant alleges that she never accepted the proposition, nevertheless it is conceded that she returned to the home and lived with them thereafter. Some changes, however, in their mode of living were made about 1904. At that time they ceased to take their meals together, but ate at separate tables. This seems to be the only change in the mode of living, as disclosed by the record. It is by reason of the terms of this contract that the plaintiff contends she is relieved, at least, of the payment of interest on the mortgage, as well as the repairs to and taxes upon the property.

The defendant contends that this contract, if it existed, could not be construed as imposing upon him the obligation to make the repairs and to pay the taxes upon the property, or to pay interest on the mortgage resting as a lien thereon. To ascertain the meaning of the defendant as to what expenses on the property he, by his offer, intended to include, we must inquire as to what expenses as to same he was at the time and had hitherto paid, for he, in his offer, is to *continue* to pay all expenses on the property; meaning that he was to continue to pay such expenses thereon as he had before been paying.

The plaintiff testified that she had paid no interest on the mortgage from the date of its execution to anyone, her sister, the Mercantile Trust and Deposit Company, or to the defendant himself, or had she been called upon to pay any interest thereon until called upon by the defendant just before the institution of the foreclosure proceedings in 1910. Undoubtedly, someone paid the interest to the trust company during the seven years that the mortgage was held by it, and such interest, as testified by the plaintiff, was not paid by her. Such interest, therefore must have been paid by the defendant, as we know of no other person interested in the payment of the same. The repairs and taxes thereon, except such minor repairs as were voluntarily made by the plaintiff, were paid for by the defendant, but we find nowhere in any of the accounts or statements made and filed where any money expended for taxes and repairs upon said property,

or interest upon said mortgage, either that paid to the Mercantile Trust and Deposit Company or that which is claimed to be owing to him thereon during the thirteen years that he held it, were ever charged to the plaintiff. During the whole of this time no rent for the property was ever received by the plaintiff, and we find no allowance for rent to her in any of the accounts made and filed by the defendant. And thus it would seem that in consideration for the rent of the house the defendant had paid the taxes and repairs upon the property, assessed at $11,900, the value of which is said by the defendant in one of his estimates to be in excess of the assessment, and had paid the interest on the mortgage, amounting to $200 annually, and had furnished her lodging and board, subject to the burden imposed upon her in the care and rearing of the children from early infancy. Therefore, as the taxes and repairs and the interest on the mortgage were included in the expenses upon the property paid by the defendant at the time of and before the making of this offer, and as he was, by the offer, to *continue* paying all expenses upon the property, we think that the meaning intended by the defendant to be conveyed to the plaintiff by his offer, and the meaning which the plaintiff would naturally understand from the offer, was that such taxes and interest should be paid by him.

In the decree an accounting was ordered, and without discussing the facts of the case in respect thereto, we find no difficulty in reaching the conclusion that an accounting should have been ordered, and we think the Court committed no error in his directions to the auditor in stating the account.

We likewise agree with the Court in its finding that the claim made by the plaintiff for money spent by her for clothing for the children of the defendant was not satisfactorily proven, and that the auditor was properly directed when told to exclude the same.

Nor do we think the Court committed any error in overruling the motions to dismiss the bill for multifariousness.

The objection to these bills for multifariousness was not raised by demurrer, but by motion to dismiss, as we have stated, long after the defendant had filed his answers to the bills and at the beginning of the taking of testimony, and even though they be objectionable for multifariousness, which we think they are not, his failure to demur at the proper time should in this case be regarded as a waiver of the objection, as the facts do not warrant an interference of the Court.

The motion made by the defendant that the "matters and facts in the case be submitted to a jury" was, we think, also properly overruled. We think the issues raised by the bills and answers in these cases are not such as should be submitted to a jury under the provision of the statute (section 31 of Article 16 of Bagby's Code), by virtue of which the motion was made, which provides that "whenever the Court shall be of opinion that there is a question or questions involved in such (declaratory) suit, which a party or parties may be entitled under the constitution, to have submitted to a jury, the Court shall, if such party or parties require it, direct an issue or issues to be made up and sent to any Court of law convenient for trying the same. But nothing herein contained shall be so construed as to prevent the equity Courts of Baltimore City from summoning a jury to try such issue or issues," etc. But even should it be found that one or more of the issues should be so submitted to a jury, it is clear that all the issues should not be so submitted, and this being true the motion was for that reason properly refused, because it comprehended the submission of all the facts in the cases.

The Court, as we have said, consolidated these cases under a motion of the plaintiff. In this case the Court in our opinion committed no error. Applying the maxim, equity prevents a multiplicity of suits, cases pending at the same time, relating to the same subject-matter which can be conviently determined by one decree, may upon the application of either party be consolidated. *Phelps' Juridical Equity.*

The practical object in view in such cases is the economy of time and costs, and as these cases related to the same subject-matter and may be conveniently determined by one decree, and the objects sought to be accomplished in no wise conflict with each other, we know of no reason why these cases should not have been consolidated. *Day* v. *Postal Telegraph* Co., 66 Md. 360.

As we have stated there are many exceptions to the admission and rejection of testimony, all of which we have carefully considered, but as we have reached our conclusion almost exclusively upon the conceded testimony in the case, we think it unnecessary to pass upon them for our conclusion would not be affected thereby.

From what we have said, we think the Court below committed no error in passing the decree appealed from, we will therefore affirm the decree.

> *Decree affirmed, the appellant, Edwin M. Wilmer, to pay the costs above and below in both cases, except the clerk's costs and appearance fees in No. 29 in this Court, which are to be paid by Susan E. Placide.*