EDWIN M. WILMER ET AL.

*vs.*

SUSAN E. PLACIDE.

*Fraudulent or voluntary conveyances: void as to creditors.*

Where a man conveyed his property to his sister in considera-
tion of $5.00 and other valuable considerations, the fact of his
owing her some $438.88 on an account, is not sufficient to sus-
tain an absolute deed conveying property producing nine hun-
dred dollars rent per annum.                    p. 402

It is a hindrance to the creditors for a debtor to dispose of
his real property and tangible chattels which are readily subject
to execution, and compel them to rely merely upon personal
obligations, with the risks and the necessity for various attach-
ments usually incident to such a resource.                    p. 406

*Decided November 15th, 1917.*

Appeal from Circuit Court No. 2 of Baltimore City.
(BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS and URNER, JJ.

*David Ash,* for the appellants.

*Charles F. Stein* and *John L. Sanford* (with whom was *Harry M. Benzinger* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The bill in this case was filed by the appellee to set aside a deed executed on the 21st day of November, 1911, by Edwin M. Wilmer to F. Zeilin Wilmer alleged to be fraudulent and void, and intended to hinder, delay and defraud the plaintiff and other creditors. The bill was filed on the 18th of April, 1913, and after some other proceedings which we need not refer to, the lower Court on June 16, 1915, ordered certain pleas which had been filed by the defendants to be stricken out as insufficient, and that the answer filed in support of the pleas should stand as an adequate response to the bill. An appeal was entered from that order on the 12th of August, 1915,—four days from the expiration of the two months within which appeals can be taken in equity—but the record was not sent to this Court until too late for the October Term. The case was heard at the January Term, 1916, and the appeal was dismissed on March 2nd, 1916, 128 Md. 168. An amended answer was filed after the cause was remanded, testimony was taken, and on December 19th, 1916, a decree was passed declaring the deed to be null and void, as against the plaintiff and other creditors of Edwin M. Wilmer who were such on the date of the deed. On February 17, 1917, two days before the expiration of the time, an appeal was taken but the record was not received in this Court until May 16th, one day before the time expired under the rules of this Court. The result was that the case could not be heard until the present October Term, whereas it might have been gotten

ready certainly by the April Term, even if the appeal could not well have been ready by the January Term—there being over two months after the decree before the April Term began.

Such delays are inexcusable, unless there is some good reason for them, which does not appear in this case, and are of the character which have caused criticisms by the public and renewed efforts on the part of members of the bench and bar and Bar Associations to have them avoided. It is no excuse to say that the rules of this Court have not been violated, for those rules were not intended to afford unnecessary delays but to provide for cases which require more time than the record in either of these appeals could possibly have done. This bill was filed over four years ago, on the alleged ground that a deed made about seventeen months before that was intended to delay and hinder the creditors of the grantor, and if existing statutes and rules of Court can be used to further delay and hinder creditors, it is high time that they should be changed.

The consideration mentioned in the deed is "the sum of five dollars and other good and valuable considerations." The appellants testified that the considerations, in addition to the five dollars, were $438.88 due by Wilmer, the grantor, to his sister, the grantee, and her agreement to furnish him with a home and care and maintenance during the balance of his natural life.

We will as briefly as we can consider the two considerations named, in addition to the five dollars, separately. According to the evidence Miss Wilmer had lived with and had been supported by her brother, Edwin M. Wilmer, since 1882. From 1897 to 1904 she had charge of his house, for which services she received her board and was to be paid "a ten per cent. commission on whatever the monthly expenses might be—that is the monthly expenses of the domestic part of the house." He and his sister testified that this balance of $438.88 had been due her since 1904, at which time she ceased to have charge of the house, and his daughter who had

grown up took charge. The deed in question conveyed all
the grantor's right, interest, title and estate which he held as
tenant by the curtesy in the estate and property of his de-
ceased wife, and especially to rents, profits, income and dis-
tributions accruing to him and arising out of the estate and
property wheresoever situated. A number of ground rents
in Baltimore were intended to be conveyed by the deed from
which there was an annual income of about $900.00 a year.
The alleged account of $438.88 had been overdue about seven
years when the deed was made, and could have been paid for
in six months out of the income from the ground rents. Dur-
ing the six years from the date of the deed to the present
time, over $5,000.00 would have been received from those
ground rents, but it is proper to say that two of the proper-
ties have been sold in some other proceedings and we under-
stand the income from the remaining properties covered by
the deed to be $797.00 a year.

The deed conveyed all the real and leasehold property
which Wilmer had in the State, excepting one piece of prop-
erty which he conveyed to his sister by deed dated August
10th, 1912, in consideration of $5.00 "and other valuable
considerations." He testified that he had other assets in the
State but without discussing that, it is sufficient to say that
they were not of a kind which a debtor can require his cred-
itor to look to, as a justification for disposing of his tangible
property to the detriment of creditors. It is manifest that
the alleged indebtedness from him to his sister was not a
sufficient consideration to sustain the deed.

Coming then to the other consideration claimed by the ap-
pellants, we find that from 1882 until shortly before this deed
was made Wilmer had lived on Madison avenue in the City
of Baltimore, and Miss Wilmer, one of the appellants, an-
other sister and two nieces had lived with him. After a long
and bitter litigation between him and the appellee which
reached this Court and can be found reported in 118 Md.
305, 119 Md. 49 and 123 Md. 532, it was finally ended in

favor of the appellee. The lower Court passed a decree on the 27th of October, 1911, referring the case to the auditor to make an audit in accordance therewith, and less than a month thereafter this deed was made. That decree referring the case to the auditor was affirmed in 118 Md. The order of Court ratifying the audit was reversed in part and affirmed in part in 119 Md., but in 123 Md. the order ratifying a new audit was affirmed. That litigation finally resulted in a personal decree against Wilmer in favor of Miss Placide for $2,193.15, and it was determined that the house on Madison avenue belonged to her, 118 Md. 305. When that litigation and its results are considered in connection with the testimony in this case, we can have no doubt that the deed was made with a deliberate intent to hinder the appellee from collecting what was decided to be due her. Wilmer testified, in answer to the question why he executed the deed: "I had been just prior dispossessed of the property No. 1300 Madison avenue in which I had resided continuously from 1882, and which property was impressed with a trust in favor of my wife, Mrs. Alice Placide Wilmer, and I was given fifteen days only in which to reorganize a household for my sister, Miss Florence Wilmer, and an invalid sister, whom she cared for, and two of my nieces—orphan nieces." Again, he was asked what was the necessity of making the deed, and replied: "I was facing a sweeping away temporarily of some of my assets, and in providing a new home for my sister and nieces I wished to relieve myself entirely of all domestic responsibility and care."

It is proven in the case that Miss Wilmer had no property, outside of the claim alleged to be due by her brother, before this deed was made to her. They moved to Hoffman street after he was dispossessed of the Madison avenue property, and the following appears in his evidence: "Q. Now, Mr. Wilmer, after the execution of this deed what change was there in the manner of living in so far as the home was concerned? A. Well, my two sisters and my two nieces resided

at the property which was leased by my sister, Florence Zeilin Wilmer, as tenants, and I had my room, took my meals and had no concern whatever with any of the domestic arrangements.   Q. How did that differ from the previous arrangements?   A. It differed in this way: that under the arrangement at Madison avenue I supported and sustained the whole family there.   Q. And under this arrangement, who did it, your sister?   A. My sister conducted the house as her own.   Q. What monetary difference did that make to you, if any?   A. My expenses have been nothing so far as the house and domestic affairs were concerned.   Q. And you gave her an income of about $900.00 a year, is that it?   A. I conveyed to her the right and title to about $900.00 a year; yes, sir."

He also testified that he had spent on an average of $2,500, or $3,000 a year for housekeeping purposes on Madison avenue, yet according to his testimony, his sister ran the house on Hoffman street and kept him and the other members of the family on the $900 income, and that included rent of the house.   The situation was simply this: he turned over all the real and leasehold property (excepting the one lot which he afterwards conveyed to her) to his sister.   She kept the Hoffman street property with the same family he had on Madison avenue.   It was run in her name but actually with his money turned over to her.   If that could be permitted, no creditor would be safe.   All a debtor would have to do would be to convey all his property that his creditors could reach to a third person on the understanding that he was to be cared for and maintained for life.   In this case, as we have seen, the alleged indebtedness was paid in six months and the grantor in the deed lives as he did before, with his two sisters and his nieces, with the additional advantage that he has no care or trouble with domestic affairs, but his creditors are held off.

We have gone more at length into the testimony than was perhaps necessary, for it seems to us that a plainer case for

relief by a Court of Equity could not well be presented. There can be no question about holding the grantee liable for the relief sought. She was aware of the litigation between Wilmer and Miss Placide, who is his sister-in-law, was a witness in the case, and must have known why they left the Madison avenue house. No one of ordinary intelligence could live in a family as she did, when all that litigation was going on, and the property was turned over to her, without knowing enough to put her on such further inquiry as to make her liable, if she did not in fact know why the deed was made to her. In *McCauley* v. *Shockey,* 105 Md. 641, Judge Schmucker, in speaking of the circumstances surrounding the execution of a mortgage to two sisters, said much which is applicable here. It would be difficult to believe that the litigation would not be frequently talked over by the members of the household, and when after owing her the debt for seven years Wilmer volunteered to convey the ground rents to her in payment of that debt, and to make her the head of the house, as he in effect did, she must have known why it was to be done. It is greatly to be regretted that so much litigation has been kept up between these parties, as the costs and expenses connected with it would have gone far towards liquidating the indebtedness due the appellee, but we can not hesitate to affirm the decree of the lower Court.

In 12 *R. C. L.,* sections 60 to 70 of the Article on Fraudulent Conveyances, different branches of the subject are well considered and many cases are cited. See also 1 *Alex. Br. Stat.* (Coe's Ed.), in the notes on pages 507 and 508, where many of the Maryland cases are cited on the subject of the intent of the parties in such transactions. As was said in *McCauley* v. *Shockey, supra*: "From the nature of the case, a creditor attempting to set aside a conveyance as fraudulent can seldom prove as an independent fact the knowledge of or participation in the fraud of the grantor by the grantee. That knowledge or participation must be gathered from the various facts and incidents composing the transaction, and its

environment." As reflecting upon the question in reference to the property which Wilmer claimed he still had, see *Goodman* v. *Wineland,* 61 Md. 449. It is there said: "It is a 'hindrance' to creditors for a debtor to dispose of his real property and tangible chattels which are readily subjected to execution, and compel them to rely upon merely personal obligations, with the risks and the necessity for numerous attachments usually incident to such a resource." *Bullett* v. *Worthington,* 3 Md. Ch. 99; *Warner* v. *Dove,* 33 Md. 586. In *Scott* v. *Keane,* 87 Md. 709, on page 720, we said: "As against existing creditors no effort of a debtor to hinder or delay his creditors is more severely condemned by law than an attempt to place his property where he can enjoy it but require his creditors to await his pleasure for the payment of their claims." But the questions involved here are so well settled that we will not prolong this opinion by citing more authorities. Nor will we discuss the numerous exceptions filed, but will only add that we find no reversible error in any of them.

*Decree affirmed, the appellants to pay the costs.*