# EDWIN M. WILMER

## *vs.*

# SUSAN E. PLACIDE.

*Depositions—Objections to Testimony—Res Adjudicata—Taking Case from Jury.*

A rule of court that no demurrer, motion or other paper, which may require a hearing by the court in advance of trial of the whole case on the merits, shall be filed until a copy shall have been served on the opposing party, has no application to an exception to and motion *ne recipiatur* in reference to a deposition, if based, not on the execution or return of the commission, but on the inadmissibility of the evidence taken under the commission. p. 108

Since Code, Art. 35, Sec. 21, provides for the use of the deposition of a resident witness only when the witness is dead or unable to attend, it may be presumed, in the absence of anything in the record to show such necessity for the use of the deposition of such a witness, that the action of the lower court in excluding it was based on the lack of evidence of such necessity. p. 109

After the refusal, by the Court of Appeals, as well as by the lower court, to strike out a decree as having been obtained by perjured evidence and fraud, the unsuccessful party cannot bring an action at law against the successful party for damages on account of the asserted perjury and fraud. pp. 110-114

The defense of *res adjudicata* can be relied on either by special plea or under the general issue plea. p. 113

An objection by defendant to the introduction of evidence cannot be regarded as equivalent to a demurrer, for the purpose of enabling the court to pass on the sufficiency of the declaration, or of the different counts thereof. p. 115

It is error for the court to refuse to allow the plaintiff to introduce any testimony and to direct a verdict for defendant, even though some of the counts of the declaration are manifestly bad and the others are questionable. p. 115

*Decided November 17th, 1920.*

Appeal from the Superior Court of Baltimore City
(STUMP, J.).

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*David Ash,* for the appellant.

*W. Herdman Schwatka* and *Harry M. Benzinger,* for the
appellee.

BOYD., C. J., delivered the opinion of the Court.

This record presents some peculiar and unusual condi-
tions.    There are four bills of exception in the record, the
first three presenting rulings of the lower Court in reference
to testimony, and the fourth was to an instruction directing
the jury to render a verdict for the defendant.    The first
exception was taken to the action of the court in overruling
the plaintiff's objection to the defendant's exception to and
motion *ne recipiatur* of the deposition of Elijah J. Bond
taken *de bene esse.*    That objection was based on certain
rules of the Superior Court of Baltimore City but, as we
understand the record, the plaintiff's attorney is manifestly
under a misapprehension of the application of the rules.
Rule 3-A begins by saying, "No demurrer, motion or other
paper *which may require a hearing by the court in advance
of trial of the whole case on the merits* shall be filed until
after a copy thereof shall have been served upon the oppos-
ing party or parties or counsel of record, or otherwise in
accordance with the provisions of Rule 8," etc.    What we
have italicised is a sufficient answer to the plaintiff's conten-
tion.    No exception to the execution and return of the com-
mission was filed, but the objection to the testimony of Mr.
Bond was that it was not admissible.    That did not require
a hearing in advance of the trial of the whole case on the
merits, but the time to object to the substance of the evi-
dence taken under a commission is at the trial.    The recent

case of *Woodward* v. *Tyng*, 123 Md. 98, 116, sufficiently disposes of that exception to avoid the necessity of citing other authorities.

The second exception was to "sustaining said exceptions to said testimony and in granting and sustaining said motion *ne recipiatur* and in refusing to receive the testimony of said Elijah J. Bond or any part thereof and in refusing to permit said deposition or any part thereof to be placed in evidence or read to the jury." It might be sufficient to say that there is nothing in the record to show the necessity for the use of the deposition *de bene esse* of Mr. Bond, Sec. 21 of Art. 35 provides for taking the deposition of any witness "to be used as testimony on the trial of such action, in case only of the death of such witness, or on proof to the satisfaction of the court of the inability of the party to procure the attendance of such witness at the time of trial and the probable continuance of said inability until and at the next term, before the court shall permit such testimony to be used". We do not find in the record any statement that the witness was dead, or proof of his inability to attend. In *Consolidated Ry Co.* v. *O'Dea*, 91 Md. 506, this section (which was sec. 19 of the Code of 1888) was before the Court. Chief Judge McSherry on pages 512-513 said of it: "Primarily the statute contemplates that the resident witness shall appear in person, but as contingencies might occur where this would not be possible, the Legislature provided by Sec. 19 for the production of his testimony by deposition if the personal attendance of the witness could not be procured in a reasonable time. The deposition thus taken can only be used should the witness continue unable to be present." As the lower Court is presumed to have acted correctly, in the absence of something to show the contrary, we might assume that the plaintiff did not satisfy it that the deposition could properly be used. It is true that this is not given as one of the objections to its admission, but the mo-

tion after referring to several other grounds adds, "And for
other reasons to be stated."

But without relying on that, was the court right in re-
fusing to permit the deposition to be read in evidence? A
good deal of Mr. Bond's evidence was wholly irrelevant, and
the only part of it that could under the plaintiff's claim be
said to be pertinent was that in reference to the deeds for and
the mortgage on the Madison Avenue property. He testi-
fied that he left Baltimore in 1892 and did not come back
permanently until 1913, that he only visited Baltimore in
that interval three or four times, but there is not the slight-
est suggestion that he could not have been procured at the
hearing by Wilmer, if his evidence was deemed important
or desirable. There may be some question about what prop-
erty is referred to in the other counts, but there can be none
as to the fifth and sixth counts, as they refer to No. 1300
Madison Avenue. There are few, if any, instances in the
reports of decisions of courts where one property has been
more in litigation than that. There was every opportunity,
as shown by the records and decisions of this court, for this
appellant to present every phase of the cases that was per-
missible and, in some of them, some points were pressed
which had no foundation in law or equity. Speaking then
of the Madison Avenue property, this suit is an attempt to
continue, or to speak more accurately, to re-open litigation
in a way that has no justification under the decisions of this
court, whatever may be the rule in any other jurisdiction.

The fifth count alleges that the defendant "did by fraud,
fraudulent conspiracy and perjury, dispossess and deprive
the plaintiff of his rights in said property, and in further-
ance of said object, wrongfully and wilfully, corruptly and
fraudulently, repudiate her certain deed of said property
to her sister, theretofore duly executed, acknowledged, de-
livered and recorded, and, in order to perfect said fraud,
did wilfully on false testimony and otherwise commit and
cause to be committed perjury in a certain suit and suits

pending between the plaintiff and defendant in the several courts of Baltimore City". The sixth count alleges that the defendant executed a mortgage on said property, which became the property of the plaintiff, "and that by false testimony, perjury, fraud and conspiracy, said Susan E. Placide did, by abuse of the process of the courts of Baltimore City, cause the plaintiff to lose his property in said mortgage, and to be otherwise injured and damaged".

In the case of *Wilmer* v. *Placide,* 118 Md. 305, Susan E. Placide filed a bill against Edwin M. Wilmer, alleging that she was the owner of No. 1300 Madison Avenue, which was conveyed to her by Edwin M. Wilmer and George W. Lindsay, Trustees, by deed dated June 16, 1887, that on the third of November, 1890, she gave to her sister Alice B. Wilmer, who was the wife of Edwin M. Wilmer, a mortgage, which was assigned by her to the Mercantile Trust & Deposit Company, which assigned it to Edwin M. Wilmer on the 28th of December, 1897, and which the bill alleged had been fully paid. The bill also alleged that Wilmer was largely indebted to the plaintiff for money collected by him for her and for money entrusted to him to be paid upon the mortgage, which he failed to apply thereto, and wrongfully took an assignment of the mortgage to himself, that after the death of Alice B. Wilmer the plaintiff took charge and control of and cared for her three infant children and in 1897 she allowed said Wilmer to bring to the Madison Avenue home, where he, his children and the plaintiff then lived, his two sisters and two nieces, and permitted them to occupy the greater part of her house under an agreement that he would pay all expenses, taxes, repairs and interest on the mortgage, etc.

Wilmer in his answer denied the plaintiff's ownership of the Madison Avenue property, and alleged that, after the conveyance to the plaintiff by the trustees, she conveyed it away, denied the alleged indebtedness and the agreement as to the occupancy of the house, and that the plaintiff had paid

any part of the mortgage excepting a small amount for which credit was given at the time of the assignment to him. On December 28th, 1910, Miss Placide filed a bill against Edwin M. Wilmer, Henry Placide Wilmer and E. Placide Wilmer, sons of Edwin M., and H. V. Morse, husband of a deceased daughter of Edwin M. Wilmer, in which she alleged that Edwin M. had left for record in the clerk's office a deed dated the 28th of July, 1887, by which she was said to have conveyed to her sister, Alice B. Wilmer, the house and lot known as No. 1300 Madison Avenue. She denied that she ever signed such a deed, and alleged that she never heard of it until at or about the time it was put on record, which was on December 8th, 1910. Alice B. Wilmer died intestate on June 29th, 1891, and Edwin M. claimed a life estate in said property as the husband of his deceased wife. A great mass of testimony was taken and there were numerous exceptions filed by Wilmer to the rulings of the court upon the admission or rejection of testimony.

The two cases were consolidated and there was a decree passed which set aside the alleged deed, and the papers in the case were referred to the auditor to state an account as therein directed. Both sides appealed to this court. It will be noticed that the mortgage was given over three years after the alleged deed was made, which deed was not recorded for more than twenty-three years after its date—while the first suit referred to above was pending. The two surviving children of Edwin M. Wilmer filed an answer admitting the allegations of the bill and said they never heard of the alleged deed until shortly before it was recorded, and that they were willing and anxious that it be declared void and of no effect. The testimony showed that Edwin M. Wilmer had drawn the petition to the court and the order thereon for his wife, who was trustee, to loan the money on the mortgage, and that he had drawn a number of papers which showed that the property belonged to Miss Placide.

Miss Placide testified that she had frequently signed papers at Wilmer's instance without understanding what was in them, owing to the confidence she then had in him. She denied that she had gone before the justice of the peace before whom the deed to Mrs. Wilmer purported to have been acknowledged, while Mr. Bond, in his deposition, said he was present when she acknowledged it but, as will be seen in the opinion in 118 Md., the conclusion reached by the court was "almost exclusively upon the conceded testimony in the case". In *Wilmer* v. *Placide,* 127 Md., 339, there was an attempt to have the decree passed in 118 Md. vacated and set aside. The grounds relied on were fraud and newly discovered evidence, and the fraud was alleged to consist of perjured evidence. As to the latter the court said it fell directly under the rule laid down in *Maryland Steel Co.* v. *Marney,* 91 Md. 360. The authorities there cited by JUDGE STOCKBRIDGE showed too clearly the opinion of this Court on the subject to require further citations or discussion of the question. While the case reported in 127 Md. was an effort to set aside and vacate a decree, the principle involved in this case is the same. Indeed a court of equity would be more anxious to set aside a decree obtained by perjured testimony than a court of law could be to sustain such a suit as this. There must be an end to litigation somewhere, and if the litigant who loses his case is to be permitted to sue the opposite party for alleged perjury and gains that case, what is to prevent that party from suing him on the same ground, and thus indefinitely continue the litigation?

In this State the defense of *res adjudicata* can be relied on either by special plea or under the general issue plea. *Impervious Products Co. v. Gray,* 127 Md. 64, where some of the earlier cases are cited. As not only the lower court but this court had decided the questions involved in reference to the ownership of No. 1300 Madison Avenue, and had refused to strike out the decree on the alleged ground that it had been obtained by perjured evidence and fraud,

it would be a reflection upon the administration of justice
to hold that, notwithstanding the records of this court show
the facts and circumstances connected with the case, and its
decisions have disposed of the questions, either it, or a court
subject to be reviewed by it, is required to entertain and
pass on the same questions in another proceeeding between
the same parties.   There could be no possible doubt that this
court would be authorized to consider its own records and
decisions on the subject, and hence if there is any question
about the right of the lower court to do so, this court would,
hold it not to be reversible error, even if it be conceded that
there was technical error, in rejecting evidence which must
ultimately be rejected.

There is nothing whatever in the evidence of Mr. Bond
which could reflect upon the allegation in the sixth count
as to the abuse of the process of the courts of Baltimore City,
quoted above.   Without quoting from it, what a malicious
abuse of legal process consists of is shown by JUDGE Mc-
SHERRY in *Bartlett v. Christhilf,* 69 Md. 219, and there is
nothing in the records of this Court in the cases in refer-
ence to the Madison Avenue property which could possibly
sustain or admit of a charge of abuse of legal process.   So
without further discussing the question, we are of the opin-
ion that the deposition of Mr. Bond was properly excluded.

Edwin M. Wilmer was called and, after stating where
he resided and that he was the plaintiff, counsel for defend-
ant objected to any testimony on the part of the plaintiff,
contending that the matters contained in the declaration had
already been passed upon by this court adversely.   Over the
protest of the plaintiff, the court sustained the objection of
defendant and refused to permit the plaintiff to introduce
any further testimony in the case.   That ruling constitutes
the third exception.   Then this appears in the record: "The
court does not think it is proper and hence will not permit
any further testimony to be offered on the plaintiff's part,
and you are instructed by the court, when the clerk calls

upon you for your verdict in this case, to render it for the
defendant.   The court has already given its opinion and
the case has been discussed from the legal side on a motion
that was made during your recess on the part of the .de-
fendant to exclude the written testimony offered in the case,
so that the court being of opinion that the questions in-
volved in substance in this case have already been passed
upon in such a way as not to justify as a matter of law any
further proceedings in this case, you will when called upon
render your verdict for the defendant. . And the jury there-
upon rendered a verdict for the defendant." That action
of the court is embraced in the fourth exception, and the
two exceptions will be considered together.   The declara-
tion contains seven counts, only two of which (fifth and
sixth) in terms refer to the Madison Avenue property.   It
is impossible for us to know what evidence the plaintiff
proposed to introduce, or to what property he referred. There
was no demurrer filed to the declaration or to any of the
counts in it.   Although, in passing on the admissibility of
evidence, the court is required to examine the pleadings in
order to ascertain whether the evidence is admissible, as
decided in *Leopard* v. *C. & O. Canal Co.,* 1 Gill 222; *Mar-
shall* v. *Haney,* 9 Gill 251; and *B. & O. R. R. Co.* v. *State,
use Woodward,* 41 Md. 286, there is nothing before us to
show what was to be offered by the plaintiff, and we know
of no case which would authorize us to treat an objection
to evidence as equivalent to a demurrer and thereby enable
us to pass on the sufficiency of the declaration, or the differ-
ent counts.

So although some of the counts are manifestly bad, and
it may well be questioned whether any of them are good
under the decisions of this court, we do not feel at liberty
to now pass on them and, if we found them all bad, to hold
that there is no reversible error in taking the case away from
the jury, although it is to be much regretted that we feel
compelled to do anything which will continue the litigation

between these parties. Such cases as *Maryland Steel Co.* v. *Marney,* 91 Md. 360, and *Wilmer* v. *Placide,* 127 Md. 339, show the position this court has taken when it was sought to obtain relief from a judgment or decree alleged to have been obtained by perjured testimony, and those of *McNamee* v. *Minke,* 49 Md. 122; *Clements* v. *Odorless Excavating Apparatus Co.,* 67 Md. 461; *Bartlett* v. *Christhilf,* 69 Md. 219; *Supreme Lodge* v. *Unverzagt,* 76 Md. 104; *Rieger & Co.* v. *Knight,* 128 Md. 189, and *Wegefarth* v. *Wiessner,* 134 Md. 555, show how suits for malicious prosecution in civil cases, including the alleged abuse of process of courts, are regarded by it, and not encouraged. But as there is nothing in the record to show that the counts other than five and six refer to matters already disposed of by us or even what evidence was intended to be offered, we are forced to the conclusion that the lower court fell into error in excluding all the evidence and directing the jury to return a verdict for the defendant, and we must therefore reverse the judgment and remand the case for a new trial.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*